**UNITED STATES ex rel. McALESTER–EDWARDS COAL CO. v. FALL, Secretary of the Interior, et al.**

(Court of Appeals of District of Columbia. Submitted December 6, 1921. Decided January 3, 1922. Writ of Error to Supreme Court of United States Allowed January 20, 1922.)

No. 3695.

1. **Indians 15(1)—Lessee of coal under lands can purchase surface at previously appraised value.**

Act Feb. 8, 1918, authorizing the sale of coal in the segregated mineral lands of the Choctaw and Chickasaw Nations after such minerals have been appraised, and giving lessees of such minerals the preferential right, if exercised within 90 days after the appraisal of the minerals, to purchase, at the appraised value, the surface of the lands theretofore reserved

by the Secretary of the Interior, did not intend that the value of the surface should again be appraised, since the act makes no provision for such appraisement, and it could not be made within the 90 days during which the lessee must purchase, and therefore the lessee is entitled to purchase the surface at the value placed on it by appraisal, under Act Feb. 19, 1912.

2. Mandamus ⚎72—Does not lie to review erroneous decision by ministerial officer, based on interpretation of statute.

The rule that mandamus will not lie to control the exercise of discretion by an executive officer applies, where the law reposes in the officer the power to do an act on the fulfillment of certain conditions, and who must find compliance therewith as a condition precedent to granting relief, or where the construction of a statute is essential to determine whether the party seeking relief comes within its provisions.

3. Mandamus ⚎71—Writ issues to compel performance of ministerial acts refused on erroneous construction of statute.

Mandamus will issue to compel an executive officer to perform a ministerial act required of him by statute, even though his refusal to perform the act is based on an erroneous construction by him of a statute.

Smyth, Chief Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Petition for mandamus by the United States, on the relation of the McAlester-Edwards Coal Company, against Albert B. Fall, Secretary of the Interior, and others. From a judgment denying the writ, relator appeals. Reversed and remanded.

J. W. Beller, of Washington, D. C., Geo. M. Porter, of McAlester, Okl., and C. H. Syme, of Washington, D. C., for appellant.

C. E. Wright, of Washington, D. C., G. G. McVay, of Ardmore, Okl., and Edwin O. Clark, of Stigler, Okl., for appellees.

VAN ORSDEL, Associate Justice. This appeal is from a judgment of the Supreme Court of the District of Columbia denying a writ of mandamus to compel the Secretary of the Interior and the other formal respondents to receive a balance alleged to be due upon the purchase price of certain coal lands in Oklahoma and to issue a patent therefor.

It is alleged by the petitioner, the McAlester-Edwards Coal Company, and admitted by the government, that, under the provisions of the act of Congress of July 1, 1902 (32 Stat. 641), the Secretary of the Interior reserved the lands in question from allotment to the individual members of the Choctaw and Chickasaw Nations; that petitioner is the owner of coal mine leases upon said lands, executed under the act of Congress of June 28, 1898 (30 Stat. 495), and extended in area under the act of Congress of March 4, 1913 (37 Stat. 1007).

By the act of Congress of February 19, 1912 (37 Stat. 67), the Secretary of the Interior was authorized to sell the surface leased and unleased of the lands segregated and reserved under the act of July 1, 1902, reserving the coal and asphalt thereunder. The act required the Secretary to classify and appraise the surface to be sold. Section 2 of the act provided:

"That after such classification and appraisement has been made each holder of a coal or asphalt lease shall have a right for sixty days, after notice

in writing, to purchase, at the appraised value and upon the terms and conditions hereinafter prescribed, a sufficient amount of the surface of the land covered by his lease to embrace improvements actually used in present mining operations or necessary for future operations up to five per centum of such surface, the number, location, and extent of the tracts to be thus purchased to be approved by the Secretary of the Interior: Provided, that the Secretary of the Interior may, in his discretion, enlarge the amount of land to be purchased by any such lessee to not more than ten per centum of such surface: Provided further, that such purchase shall be taken and held as a waiver by the purchaser of any and all rights to appropriate to his use any other part of the surface of such land, except for the purpose of future operations, prospecting, and for ingress and egress, as hereinafter reserved: Provided further, that if any lessee shall fail to apply to purchase under the provisions of this section within the time specified the Secretary of the Interior may, in his discretion, with the consent of the lessee, designate and reserve from sale such tract or tracts as he may deem proper and necessary to embrace improvements actually used in present mining operations, or necessary for future operations, under any existing lease, and dispose of the remaining portion of the surface within such lease free and clear of any claim by the lessee, except for the purposes of future operations, prospecting, and for ingress and egress, as hereinafter reserved."

Pursuant to this act, the Secretary classified and appraised the lands, but appellant company elected not to purchase under the provisions of the act, since under the terms of its leases, it claimed the right to the free use of sufficient surface lands to enable it to conduct its mining operations. In recognition of this claim, the Secretary alleges in his answer:

"That the relator failing to exercise its right to purchase the surface to the extent authorized by the act of February 19, 1912 (37 Stat. 67), the Secretary of the Interior, acting under section 2 of said act, in his discretion and with the consent of the relator, designated certain portions of the land occupied by said company as necessary to its continued operations and reserved the same from sale, the residue not thus designated becoming thereby subject to sale."

By the act of Congress of February 8, 1918 (40 Stat. 433), the Secretary of the Interior was authorized to sell the coal and asphalt mineral deposits in the segregated mineral lands of the Choctaw and Chickasaw Nations, and was required, before offering the same for sale, to cause them to be appraised. Pursuant to this act, appellant company purchased the coal under at least one of its leases, paying therefor $83,319.32. The act, among other things, provides:

"That any lessee shall have the preferential right, provided the same is exercised within ninety days after the approval of the completion of the appraisement of the minerals as herein provided, to purchase at the appraised value any or all of the surface of the lands lying within such lease held by him and heretofore reserved by order of the Secretary of the Interior."

Pursuant to this provision of the act, officers of the department, acting under the Secretary, within 90 days after the completion of the appraisement of the minerals, notified appellant company of the price at which its reserved surface lands could be purchased, based upon the appraisement made under the act of 1912, and, within the time required by law, appellant company exercised its preferential right to purchase, and paid its first payment of $2,291.76, which was duly accepted. Appellant company thereafter, within the time pre-

scribed by the Secretary, made payments, and on October 15, 1920, tendered the balance of the purchase price, $10,360.06, which was refused. Hence this action to compel the Secretary to accept the balance of the purchase price and execute a patent for the lands in controversy.

The Secretary attempts to justify his refusal upon the ground that, under the act of 1918, he was authorized to make a new appraisement of said lands and sell them upon that basis. In pursuance thereof, he answers that he—

"caused an appraisement to be made by three competent persons of all the surface lands belonging to the Choctaw and Chickasaw Nations of Indians in Oklahoma embraced within coal-mining leases and reserved from sale, including the lands here in controversy, for the purpose of fixing the price to be paid therefor by the said coal-mining lessees including relator, in the exercise of the preferential rights of purchase granted by said act."

The Secretary then alleges the valuation fixed upon appellant's land to be $20,482.60, but that he—

"permitted his subordinate officers to receive applications for purchase of said lands by lessees, including the relator herein, at a different valuation, to wit, at a valuation placed thereon by an appraisement made some years before under authority of the act of February 19, 1912."

Petitioner demurred to the answer of respondents. On hearing, the court overruled the demurrer, and, petitioner electing to stand upon the demurrer, judgment was entered, discharging the rule and dismissing the petition. From the judgment this appeal was prosecuted.

[1] Coming to the construction of the statutes, we think there is no room for doubt as to their meaning. They relate to the same subject, and confer rights respecting the same subject-matter. The act of 1912 provided for an appraisement of the surface of the reserved lands, with a view to their sale. This appraisement was had in compliance with the statute, and reduced to record. The act of 1918 provided for an appraisement of the minerals under the lands, with a view to their sale. Money was appropriated from the funds of the Indians to meet the expenses of the two appraisements, and the most specific directions as to how they should be conducted were contained in the statutes.

In respect of the appraisement of the surface of the reserved lands, the act of 1918 contains no directions as to how such an appraisement should be made, and no provision for the payment of the expenses thereof. It is clear, we think, from a comparison of the two acts, that the right granted by the act of 1918 to purchase "at the appraised value" meant, and could only mean, the price fixed by the appraisement under the act of 1912.

The construction contended for by the government would preclude generally the exercise of preferential rights under the act of 1918. The act provides that a person or company desiring to avail itself of the right must do so, if at all, "within ninety days after the approval of the completion of the appraisement of the minerals, as herein provided." It is conceded that the attempted appraisement of the lands did not occur until long after that date. Indeed, the department was

proceeding to dispose of the lands at the price fixed by the appraisement made under the act of 1912, and payments had been received on the sales so made, when suddenly the Secretary changed front and ordered an appraisement to be made under the act of 1918. Besides, if such an appraisement of the lands was authorized by the 1918 act, why was not the time for purchase fixed with reference to that appraisement, rather than the appraisement of the minerals?

Contractual relation between the United States and appellant company is not here involved. Congress was dealing with Indian lands as guardian of the Indians, and granted a preferential right in appellant company to purchase the lands in question at a fixed price. No discretion was reposed in the Secretary, except to ascertain the facts which would bring appellant company within the class upon whom Congress conferred the right. That appellant company did comply with every requirement of law, except to yield to an erroneous interpretation of the statute, is conceded by respondents in their answer. It therefore appears that nothing remains in the present case for the Secretary to do, except the mere ministerial acts of accepting the balance of the purchase price and of directing the issuance of a patent.

[2] We do not overlook the well-established rule that mandamus will not lie to control the exercise of discretion by an executive officer. But that applies where the law reposes in the officer the power to do an act upon the fulfillment of certain conditions, and compliance therewith must be found by the officer as a condition precedent to granting relief, or where the construction of a statute is essential to determine whether the party seeking relief under it comes within its provisions. In such a case the courts refuse to convert the writ of mandamus into a writ of error to review possible errors of the officer in his findings of fact or his interpretation of the law as a basis for reaching his conclusion.

[3] But we are not confronted by such a situation, since it is conceded the conditions have been complied with and appellant company is within the preferential class provided for in the statute. The Secretary refuses to perform a purely ministerial act, solely upon a construction which he places upon the law, and insists that the court has no power in this sort of proceeding to disturb his conclusion. No discretion is committed to the Secretary in respect of the performance of the duties imposed by the statute in this case. The right of appellant company to purchase the land under one or the other appraisement is absolute, and the court is not foreclosed from deciding which the Secretary should apply.

This case, we think, falls squarely within the rule announced in Roberts v. United States, 176 U. S. 221, 231, 20 Sup. Ct. 376, 44 L. Ed. 443, and quoted with approval in the recent case of Lane v. Hoglund, 244 U. S. 174, 182, 37 Sup. Ct. 558, 560 (61 L. Ed. 1066), as follows:

"Unless the writ of mandamus is to become practically valueless, and is to be refused even where a public officer is commanded to do a particular act by virtue of a particular statute, this writ should be granted. Every statute to some extent requires construction by the public officer whose duties

277 F.—37

may be defined therein. Such officer must read the law, and he must therefore, in a certain sense, construe it, in order to form a judgment from its language what duty he is directed by the statute to perform. But that does not necessarily and in all cases make the duty of the officer anything other than a purely ministerial one. If the law direct him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language by the officer. Unless this be so, the value of this writ is very greatly impaired. Every executive officer whose duty is plainly devolved upon him by statute might refuse to perform it, and when his refusal is brought before the court he might successfully plead that the performance of the duty involved the construction of a statute by him, and therefore it was not ministerial, and the court would on that account be powerless to give relief. Such a limitation of the powers of the court, we think, would be most unfortunate, as it would relieve from judicial supervision all executive officers in the performance of their duties, whenever they should plead that the duty required of them arose upon the construction of a statute, no matter how plain its language, or how plainly they violated their duty in refusing to perform the act required."

Unless the relief here sought is granted, appellant company will be left without an adequate remedy to enforce its rights. Unlike cases involving the disposition of public lands, there will be no outstanding conflicting patent which would furnish ground for an action in equity, where the holder of such a patent might be adjudged to hold the title in trust for appellant company.

The judgment is reversed, with costs, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SMYTH, Chief Justice, dissents.