McCARL, Comptroller General, v. UNITED STATES ex rel. SOCIETA LIGURE DI ARMAMENTO et al.

Court of Appeals of District of Columbia.

Submitted October 1, 1928. Decided January 7, 1929.

No. 4754.

Leo A. Rover, R. L. Golze, and M. E. Rhodes, all of Washington, D. C., for appellant.

William R. Harr and Charles H. Bates, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This in an appeal from a judgment of the lower court in mandamus, requiring the Comptroller General of the United States to certify to the Treasury Department for payment a certain voucher issued by the Department of Labor in favor of the Smokeless Fuel Company for the sum of $7,000. The issue below was made by the petition of the Societa Ligure di Armamento, an Italian corporation, and the Smokeless Fuel Company, a corporation, as relators, the answer of the Comptroller General as respondent, and a general demurrer to the answer. The demurrer was sustained by the court, and judgment was entered upon the pleadings, whereupon this appeal was taken.

It appears that on December 20, 1924, the Italian steamship Marte, owned by the Societa Ligure di Armamento, was docked at the port of New Orleans, and remained there for eight days loading with a cargo of grain; that upon arrival at the port the ship's crew consisted of 7 officers, a steward, and 23 bona fide seamen serving upon the vessel; that upon arrival the master of the steamship was served by the United States immigration officer of the port with a written notice to detain on board all of the members of the crew except the officers and steward; that the master diligently endeavored to comply with this order, but notwithstanding his efforts 7 members of the crew made their way to the port and did not return; that a report of this fact was duly made to the immigration officer, but the vessel nevertheless was duly granted clearance from the port of New Orleans without assessment of any penalty because of the escape of the seamen; that the vessel then proceeded upon her voyage homeward, and en route called at the port of Norfolk, Va., for the purpose of coaling; that while at that port the master of the vessel was required to pay the sum of $7,000 as a fine for his failure to detain the seven deserting seamen at New Orleans; that in order to obtain a clearance at the port that sum was deposited under protest by the Smokeless Fuel Company for account of the owner, whereupon the vessel was allowed to depart; that this sum was afterwards, to wit on February 12, 1925, covered into the United States Treasury as an immigration fine; that afterwards, to wit, on May 3, 1926, an investigation was made by the Commissioner General of Immigration and the Secretary of Labor, and it conclusively appeared to them that the fine was collected through error of the government officers, whereupon they authorized and directed that it be refunded, and a voucher was accordingly issued by the Department of Labor for the sum of $7,000 in repayment of the amount to the Smokeless Fuel Company; that on May 10, 1926, the Department of Labor transmitted the voucher to the General Accounting Office of the United States for certification to the Treasury Department for payment out of the appropriations made by the Acts of May 28, 1924, and February 27, 1925, and transmitted therewith their certificate that the fine was collected by error of government officers, but the General Accounting Office refused and still refuses to certify the voucher to the Treasury Department for payment.

Upon these facts the lower court entered judgment requiring the Comptroller General to certify the voucher to the Treasury Department as prayed in the petition. The statute under which the fine was assessed and collected appears as paragraph (a), § 20, of the Immigration Act of May 26, 1924 (43 Stat. 153, 164; 8 USCA § 167), and reads as follows, to wit:

"The owner, charterer, agent, consignee, or master of any vessel arriving in the United States from any place outside thereof who fails to detain on board any alien seaman employed on such vessel until the immigration officer in charge at the port of

arrival has inspected such seaman (which inspection in all cases shall include a personal physical examination by the medical examiners), or who fails to detain such seaman on board after such inspection or to deport such seaman if required by such immigration officer or the Secretary of Labor to do so, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien seaman in respect of whom such failure occurs. No vessel shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs."

The provisions of law under which the refund of the fine was sought by the relators appear in the Appropriation Act for the Department of Labor, approved May 28, 1924, 43 Stat. 205, 240, making an appropriation for the following purposes, to wit: "* * * Refunding of head tax, maintenance bills, and immigration fines upon presentation of evidence showing conclusively that collection was made through error of government officers; all to be expended under the direction of the Secretary of Labor, * * * " and in the Appropriation Act for the Department of Labor, approved February 27, 1925, 43 Stat. 1014, 1049, making an appropriation for the following purposes, to wit: " * * * Refunding of head tax, maintenance bills, and immigration fines upon presentation of evidence showing conclusively that collection was made through error of government officers; all to be expended under the direction of the Secretary of Labor. * * * "

The duties and authority of the Comptroller General are defined in part by statute (42 Stat. 24, sec. 305; 31 USCA § 71), as follows: "All claims and demands whatever by the government of the United States or against it, and all accounts whatever in which the government of the United States is concerned, either as debtor or creditor, shall be settled and adjusted in the General Accounting Office."

It is contended on behalf of the Comptroller General that the judgment below was erroneous for the following reasons: First, that the court had no power to interfere by mandamus with an executive officer of the government in the discharge of duties requiring the exercise of judgment and discretion or as interpretation of the law; second, that, even if the fine was erroneously collected, the "wrongful taking of property by the agents and officers of the United States, if taken under a claim of right, does not give a right of action for its recovery upon an implied contract or for compensation under the Fifth Amendment," and trial courts are without jurisdiction over actions to recover on either ground; and, third, that the appropriations from which payment of the voucher is sought are not available for the purpose, inasmuch as the unexpended balances thereof have since been covered into the Treasury as required by law.

In our opinion the lower court's judgment was not erroneous. It is true that mandamus will not lie to review or control the acts of executive officers of the government in respect of matters as to which they are vested with discretion, nor can such officers be compelled to act or render a decision in any particular way so as to make the writ serve the function of an appeal or a writ of error. On the other hand, the writ may issue to compel such officers to perform purely ministerial duties when imposed upon them by law. Kendall v. United States ex rel. Stokes, 12 Pet. 524, 9 L. Ed. 1181. In such case the writ will issue, even though the refusal of the officer to perform the act is based on an erroneous construction by him of the statute. Roberts, Treas., v. United States ex rel. Valentine, 176 U. S. 221, 20 S. Ct. 376, 44 L. Ed. 443; McAlester-Edwards Coal Co. v. Fall, 51 App. D. C. 171, 277 F. 573, affirmed Work v. U. S. ex rel. McAlester-Edwards Co., 262 U. S. 200, 43 S. Ct. 580, 67 L. Ed. 949.

In the present instance the Comptroller General was not charged with duties requiring the exercise of judgment or discretion, but was called upon to perform a purely ministerial function. The proceeding related solely to the disposition of certain funds which Congress had appropriated for the refunding of immigration fines, which were to be refunded upon presentation of evidence showing conclusively that collection thereof was made through error of government officers. The funds thus appropriated were to be expended under the direction of the Secretary of Labor, consequently the finding of that officer that the fines in question were collected through error of government officers was conclusive, and the Comptroller General was not authorized to review it. The certification of the voucher by him would be a ministerial act only.

The present case is closely analogous to that of Wright v. Ynchausti & Co., 272 U. S. 640, 47 S. Ct. 229, 71 L. Ed. 454, wherein it is held, under enactments corresponding in principle with these herein involved, that the decision of the Insular Collector of Customs of the Philippine Islands, ordering that moneys collected and paid under protest, as customs duties, be refunded upon the ground that the property assessed was not dutiable under the tariff, is final and conclusive, unless appealed to the Court of First Instance, and that the Insular Auditor has no power to. re-examine the merits of such a decision by the Insular Collector, and his duty to countersign the Insular Collector's warrant for the refund, when in due form and drawn upon an applicable appropriation, is ministerial, and enforceable by mandamus.

We think these are the controlling considerations in the case, for we find no merit in the other contentions of the appellant.

The judgment of the lower court is affirmed, with costs.