### S. J. GROVES & SONS CO. v. WARREN, Comptroller General.

### No. 8405.

United States Court of Appeals for the District of Columbia.

Argued Feb. 9, 1943.

Decided April 19, 1943.

Writ of Certiorari Denied June 7, 1943.

See — U.S. —, 63 S.Ct. 1327, 87 L.Ed. —.

Mr. O. R. McGuire, of Washington, D. C., with whom Mr. O. R. McGuire, Jr., of Washington, D. C., was on the brief, for appellant.

Mr. Bernard J. Long, Assistant United States Attorney, of Washington, D.C., with whom Messrs. Edward M. Curran, United States Attorney, and Charles B. Murray and John P. Burke, Assistant United States Attorneys, all of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

GRONER, C. J.

On October 5, 1936, appellant contracted with the United States to construct the Grassy Lake Dam on the Upper Snake River, in the State of Idaho. The contract was on a standard Government form. The work was completed October 14, 1939. In good time thereafter appellant made claim for a modification of the contract to

allow for increased compensation on the ground that in the course of the work it had encountered unknown conditions which substantially increased its costs. The claim was allowed by the Secretary of the Interior to the extent of $23,615.70, and an approved voucher, together with a copy of his decision, was sent to the Comptroller General for certification for payment. The latter, after prolonged correspondence with the Secretary, refused to certify the voucher for payment and issued a settlement certificate to the effect that there was no balance due from the United States. This suit was then commenced in the District Court for a mandatory injunction restraining the Comptroller General from interfering with the payment of the claim, and for an order requiring him to set aside his settlement and to certify for payment the amount ascertained by the Secretary to be due. The District Court refused the relief asked and entered summary judgment for appellee. The case then came here on appeal.

The claim arose under these circumstances. In the construction of the dam large quantities of earthfill were necessary. The Government geologists had made a geological survey of the area, had dug test pits to ascertain whether the land in the vicinity of the dam would yield the necessary quantities, had concluded that it would, and had located borrow pits accordingly. Relying upon these explorations and the conclusion therefrom, which was approved by the Government engineer, appellant made its bid. However, in the progress of the work appellant encountered rhyolite at a depth of approximately twelve feet in the territory from which the fill was expected to be obtained. This substance was examined by the Government and rejected as unsuitable. Consequently, it became necessary for appellant to locate new pits further removed from the site of the dam, thereby incurring greater expense.

The decision of the Secretary to modify the contract to allow for this expense was based on Article 4[1] of the contract, which in substance provides that where "unknown conditions of an unusual nature differing materially from those ordinarily encountered" are found to exist, the contracting officer, with the approval of the Secretary, shall increase or decrease the contract payment accordingly.

The Secretary made the appropriate findings, deciding specifically that as a result of additional work created by "unknown conditions of an unusual nature" not contemplated by the contract, appellant was entitled to compensation as follows:

(1) Clearing and grubbing of areas not originally designated as borrow pits, $ 5,881.00
(2) Providing drainage for borrow pits, 2,731.05
(3) Constructing haul roads to additional borrow pits, 3,435.65
(4) Extra costs due to general borrow pit conditions, 11,568.00

$23,615.70

The Comptroller General, in refusing to authorize payment of these additional amounts, pointed out that paragraph 47 of the specifications expressly authorized the location of additional borrow pits by the contracting officer whenever necessary to obtain material for the embankment, and did not provide for additional payment for the work performed in such operations. He took the view that this paragraph took precedence over Article 4 of the contract, relating to changed conditions generally. With respect to the allowance for clearing and grubbing and for constructing haul roads to additional pits, he took the position that paragraphs 37 and 33 of the specifications, respectively, specifically forbid additional compensation for this work. He objected to the items representing the cost of providing drainage and the cost

[1] "Art. 4. Changed Conditions.—Should the contractor encounter, or the Government discover, during the progress of the work, subsurface and (or) latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications, or unknown conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the plans and specifications, the attention of the contracting officer shall be called immediately to such conditions, and if he finds that they do so materially differ the contract shall, with the written approval of the head of the department or his duly authorized representative, be modified to provide for any increase or decrease of cost and (or) difference in time resulting from such conditions."

alleged to have been due to general moisture conditions in the borrow pits on the ground that there was nothing in the Secretary's findings to show that these expenses were due to changed conditions within the meaning of Article 4 of the contract. In short, he concluded that Article 4 had no application and that the decision of the Secretary was a misconstruction of the contract and therefore an erroneous conclusion of law. These considerations led him to decline to authorize payment.

In this Court and in the Court below appellant relies upon Article 15 of the contract, which provides as follows: "Art. 15. Disputes.—* * * Except as otherwise specifically provided in this contract, all other disputes concerning questions arising under this contract shall be decided by the contracting officer, subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto." Appellant contends that by virtue of this Article appellee has no discretion to exercise with respect to its claim, but must authorize its payment.

We think the following two principles are readily deducible from the authorities:

■ 1. While courts as a general rule have no power of review of the action of the Comptroller General, Doehler Metal Furn. Co. v. Warren, 76 U.S.App.D.C. 60, 129 F.2d 43, they may, by means of mandamus or mandatory injunction, compel the performance of a ministerial duty to pay money. McCarl v. Cox, 56 App.D.C. 27, 8 F.2d 669; Dane v. United States, 57 App. D.C. 161, 18 F.2d 811; Baker v. McCarl, 58 App.D.C. 69, 24 F.2d 897; McCarl v. United States, 58 App.D.C. 319, 30 F.2d 561; McCarl v. Wylly, 1 Cir., 5 F.2d 964.

■ 2. Where parties to a building and construction contract, including the United States, designate a person to determine disputes arising under the contract and stipulate that the determination shall be final and conclusive, they are bound by such determination in the absence of fraud or such gross mistake as to imply bad faith. Kihlberg v. United States, 97 U.S. 398, 24 L.Ed. 1106; United States v. Gleason, 175 U.S. 588, 20 S.Ct. 228, 44 L.Ed. 284; Penn Bridge Co. v. United States, 59 Ct.Cl. 892; Albina Marine Iron Works v. United States, 79 Ct.Cl. 714; Kidwell v.

Baltimore & O. R. Co., 11 Grat., Va., 676. See, also, cases cited and discussed in Notes, 54 A.L.R., 1255, 1256; 110 A.L.R. 137, 138.

However, it has been several times held that the parties to such a contract have no power to stipulate that a designated person's determination of the law of the contract shall be final and conclusive. Mitchell v. Dougherty, 3 Cir., 90 F. 639; Tatsuuma Kisen, etc., v. Prescott, 9 Cir., 4 F.2d 670; Rae v. Luzerne County, D.C., 58 F.2d 829; English Const. Co. v. United States, D.C., 29 F.Supp. 526; State v. Kisselburg, 27 Ariz. 336, 233 P. 580; Drainage Dist. v. Kochtitzky, 146 Ark. 495, 226 S.W. 172. This rule has been generally applied in the Court of Claims, where the question naturally arises more often than elsewhere. Penker Const. Co. v. United States, 96 Ct.Cl. 1, 36; Callahan Const. Co. v. United States, 91 Ct.Cl. 538, 616. In the latter case the Court said: "In Davis et al. v. United States, 82 Ct.Cl. 334, this court held that the competency of the parties to a Government contract to stipulate that the decision of disputed questions by the contracting officer of the Government, or by the head of the department on appeal, shall be final and conclusive is limited to questions of fact and, therefore, does not include questions involving construction of the contract which are questions of law."

■ Furthermore, provisions such as this are strictly construed and must be plain and unambiguous. Mercantile Trust Co. v. Hensey, 205 U.S. 298, 27 S.Ct. 535, 51 L.Ed. 811, 10 Ann.Cas. 572, affirming 27 App.D.C. 210. Following this principle the Court of Claims in the Penker case, supra, held that a provision identical to that here was not intended to give the contracting officer power to make final and conclusive decisions on questions of law. To the same effect is Wallace v. Oregon Engineering & Const. Co., 90 Or. 31, 174 P. 156, affirmed on rehearing, 90 Or. 39, 175 P. 445. See also Connelly v. Parkes, 160 Ark. 496, 255 S.W. 22; Joint School Dist. v. Bailey-Marsh Co., 181 Wis. 202, 194 N.W. 171. One theory of this is that the rights of the parties are fixed by the contract, the construction and interpretation of which is a question exclusively for the courts.

As we have pointed out, appellee's refusal to allow the claim is on the ground

that the Secretary incorrectly construed the rights and obligations under the contract. He does not question the findings of fact made by the Secretary. Rather, he considers that the particular expenses incurred by appellant resulted from conditions that had been expressly provided for in a separate provision of the contract. In other words, the dispute between the two officers of the Government involves a question of law, which appellee here says is outside the jurisdiction of the contracting officer or head of the department.

Without now declaring ourselves upon this proposition, we think at least that it is of such doubt that it ought not to be decided in a summary action. "Where the right of the petitioner is not clear, and the duty of the officer, performance of which is to be commanded, is not plainly defined and peremptory, mandamus is not an appropriate remedy. [Citing cases]. The officer must be left free, in the performance of official duty, to decide whether he will perform the act demanded or secure by appropriate procedure a judicial determination of the extent of his duty. His decision 'is regarded as involving the character of judgment or discretion,' the exercise of which will not be compelled by mandamus." United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 543, 57 S.Ct. 855, 857, 81 L.Ed. 1272.

■■ Nothing is better settled on this general subject than that a writ of this nature may not be employed to secure the adjudication of a disputed right for which an ordinary suit affords a remedy equally adequate. United States ex rel. Carroll Elec. Co. v. McCarl, 56 App.D.C. 49, 8 F. 2d 910; United States v. Morgenthau, 70 App.D.C. 171, 105 F.2d 50. Here there can be no question of appellant's right to a trial in the Court of Claims, and nothing has been said to convince us that such a trial would not be as complete and speedy as the proceeding that was chosen. On the whole case, we agree with the Court below that appellant should be relegated to its remedy by suit in the Court of Claims.

Affirmed.