## STIERS BROS. CONST. CO. v. BRODERICK et al.

### Civ. No. 4922.

District Court, D. Kansas,
First Division.

April 7, 1945.

Robert Nagel Jones, of St. Louis, Mo., and Fred Robertson, Edw. M. Boddington, and J. O. Emerson, all of Kansas City, Kan., for plaintiff.

Eugene W. Davis, Asst. U. S. Atty., of Topeka, Kan., Philip A. Dergance, of Denver, Colo., and Major Bert E. Church, JA GD, Litigation Office, Seventh Service Command, of Kansas City, Mo., for defendants.

MURRAH, District Judge.

This matter comes on for decision at Kansas City, Kansas, on this 7th day of April, A. D., 1945, on plaintiff's and defendants' separate Motions for Summary Judgment and the Court, on January 13, 1945, having heard arguments on said motions for summary judgment by counsel for the respective parties and now having fully examined the pleadings and admissions on file, including the answers to interrogatories filed by the defendants at the request of the plaintiff, and having fully examined the affidavits filed in support of the Motions for Summary Judgment and having fully interrogated counsel finds:

1. That this is an action in which the plaintiff seeks to recover damages of the defendants for alleged breaches of contract, and in which, by counterclaim, defendants seek to recover of plaintiff the amount of an alleged over-payment made by the defendants to the plaintiff in the final settlement of the contract, all of which appears more fully hereinafter.

2. That all matters pertinent to these findings and the judgment hereinafter contained are set forth in the following pleadings and papers all on file with the Court:

a. Amended Complaint to which a copy of the contract between plaintiff and defendants and a rough drawing of the Fume Exhaust System are attached as exhibits.

b. Amended Answer (containing a counterclaim) to which the Findings of Fact of the Contracting Officer, the Ruling of the Contracting Officer, the Appeal of the plaintiff from the Ruling of the Contracting Officer to the Chief of Engineers and the decision of the Chief of Engineers are attached as exhibits A, B, C and D, respectively.

c. Plaintiff's Reply to Counterclaim.

d. Plaintiff's motion for Summary Judgment supported by the individual affi-

davits of D. G. Foutes, M. Gollub, L. J. Stiers and Robert N. Jones.

e. Defendants' Motion and their Amended Motion for Summary Judgment supported by the affidavit of C. Howard Murphy.

f. Answer of defendants made under oath by I. L. Swearingen, their Office Manager, to Interrogatories Propounded by Plaintiff and served on defendants on or about November 16, 1944.

g. Affidavit on behalf of defendants made by I. L. Swearingen, their Office Manager, in response to Interrogatories Propounded by Plaintiff served on defendants on or about December 19, 1944. and that the foregoing instruments were all duly filed by the respective parties and in each instance duly served upon opposing parties as required by the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c;

3. That at all times mentioned in the foregoing pleadings, motions, etc., the defendants, sometimes designated by the letters "A–E–M", were and they now are cost-plus-a-fixed-fee contractors of the War Department of the United States under Principal Contract No. W–461–eng–10274, and as such were and now are engaged in the construction of the Sunflower Ordnance Works in Johnson County, Kansas, under the supervision and control of a commissioned officer of the Corps of Engineers of the United States Army acting as the Contracting Officer for the United States; that during all times pertinent to this case, such Contracting Officer was Lt. Colonel E. E. Taylor who is variously designated in the pleadings and papers as the "Contracting Officer" and/or the "Area Engineer"; that the Chief of Engineers, referred to in many instances, is a commissioned officer of the Corps of Engineers of the United States Army whose headquarters were and are in Washington, D. C.;

4. That the plaintiff was at all times pertinent to this matter, a unit price subcontractor of the defendants under subcontract No. 53 to said Principal Contract No. W–461–eng–10274, under and by the terms of which the plaintiff was required to furnish all labor and equipment and to construct the complete Fume Exhaust System at the Sunflower Ordnance Works and that said subcontract was entered into between plaintiff and defendants with the approval of the Contracting Officer;

5. That said Fume Exhaust System consisted generally of 3 separate vitrified clay pipe lines, 36″ in diameter, together with other appurtenances such as plenum chambers, exhaust traps, etc.; that said 3 pipe lines were designated as "B" line, "C" line, and "D" line respectively, and were of an aggregate length of 12,885.84 feet; that said pipe lines were installed for a part of the distance in trenches underground, for another part of the distance on timber trestle work aboveground, and for the remainder of the distance they passed through a tunnel structure under a railroad fill supporting a standard gauge single track railroad; that for a part of the distance, the 3 pipe lines were laid in a single trench underground, and for the remainder of the distance underground, the 3 pipe lines were in separate trenches; that the 3 pipe lines passed under the railroad through a single tunnel and were laid parallel and adjacent to each other in said tunnel;

6. That the subject matter of this lawsuit as disclosed by the Amended Complaint, the Amended Answer including a Counterclaim, and the affidavits in support of the Motions for Summary Judgment concerns only the construction of a part of said Fume Exhaust System, to-wit:

a. The construction by the defendants with their own labor and equipment, and at their own expense, of "C" line between stations 10+70.16 and 29+53, between which stations the line was laid entirely underground in a single trench for a distance of 1882.84 feet;

b. The excavating of an open cut through a railroad fill between stations 8+01 and 8+97 to provide for the construction of a timbered tunnel, the back filling of said open cut after the installation of the timbered tunnel and the incidental removal and replacement of the railroad track on the fill. The work involving the removal of the railroad track, the excavation of the cut, the back filling of the cut after the tunnel was constructed and the replacement of the railroad track was performed by the defendants with their own equipment and labor and at their own expense. The work involved in the actual construction of the timbered tunnel, the placing of a sand bed or "sand fill" in the bottom of said tunnel and the laying of the pipe lines through the tunnel was performed by the plaintiff and the plaintiff has been paid in full therefor;

c. The digging of post holes by the defendants with their own labor and equipment and at their own expense on the remaining parts of "C" line and on "B" and "D" lines, but for which work, plaintiff was fully paid as though it had performed the same;

that as to all other items of construction involved in said Fume Exhaust System, plaintiff did perform the work with its own equipment and labor and at its own expense and was paid in full for such work in the amount of $65,043.48, which amount includes the alleged overpayment of $863.-19 which is the subject matter of defendants' Counterclaim, and excepting as to the matter of the Counterclaim, there is no dispute between the parties as to the work for which plaintiff has received such payment;

7. a. That as to that portion of "C" line constructed by the defendants (Item a. of paragraph 6 above) the plaintiff alleges that it had the right under its contract to construct the same, and that it was wrongfully deprived of that right by the defendants and as a consequence thereof, the plaintiff alleges that it is entitled to recover damages in the form of a reasonable profit, amounting to 15 per cent of the amount it would have been paid for the work under its contract prices had it performed the same;

b. That as to the excavation of the tunnel (Item b. of paragraph 6 above) the plaintiff claims that it did perform the work by the device of employing the defendants for that purpose under an oral agreement whereby defendants were to pay the plaintiff at its contract price for excavating the tunnel from which defendants were to deduct their costs, that defendants have refused to pay the plaintiff in accordance with such oral agreement, and therefore, plaintiff claims it should recover the amount of its contract price for excavating the tunnel less the amount of defendants' costs;

c. That as to the digging of post holes (Item c. of paragraph 6 above) the defendants claim and the plaintiff admits that such work was performed by the defendants but that plaintiff has been paid in full for such work as though it had performed the same, and therefore, defendants claim they are entitled to recover the reasonable value thereof;

8. a. That if the plaintiff had performed the disputed work on "C" line be- tween stations 10/70.16 and 29/53, it would have been entitled to receive, in addition to amounts paid to it and not in dispute, the sum of $11,054.59 under nine separate payment items of the contract and that its alleged reasonable profit of 15 per cent of that amount is the sum $1,658.17;

b. That if the plaintiff had performed the work of excavating for the railroad tunnel between stations 8/01 and 8/97 it would have been entitled to receive, in addition to amounts paid to it and not in dispute, the sum of $7,425 under a single payment item of the contract set up for that purpose; that defendants' costs for excavating and backfilling said tunnel is the sum of $1,375.87 and, therefore, the difference between said two amounts is the sum of $6,049.16;

c. That although required of the plaintiff, it did not perform the necessary digging of post holes the price for which was included in a payment item of the contract, but, nevertheless, the plaintiff was paid in full for such work notwithstanding such work was performed by the defendants with their own labor and equipment at a reasonable value of the sum of $863.19;

d. That the parties hereto by their various admissions in the pleadings, their affidavits in support of their motions for summary judgment, and by the admissions of respective counsel on interrogation by the court, agree as to all amounts set forth in this paragraph;

9. That the plaintiff does not allege or assert, nor does it offer proof by affidavit or otherwise, of any actual or real damages, suffered by it by reason of the circumstances surrounding defendants' performance of the work on "C" line and the tunnel; that the plaintiff merely alleges and claims that it is entitled to, first, the reasonable profit that it would have made had it been permitted to perform the disputed work on "C" line, and, second, that it is entitled, as a further profit to the difference between its contract price for excavating the tunnel and the amount expended by the defendants in performing that work;

10. That the contract between the plaintiff and the defendants, so far as pertinent to the issues herein, provided:

a. That the plaintiff was to furnish all labor and equipment and construct the complete Fume Exhaust System, includ-

ing all items in dispute, under the Specifications, which are made a part of the contract;

b. That the work included and was limited to 37 specifically described items of construction with approximate quantities for each for an agreed unit price to be paid the plaintiff under each item;

c. That the stated quantities of work under the thirty-seven (37) items were subject to variation in accordance with actual work performed such as to define the total payment to be made under the contract within a range of 50 percent to 150 percent of the face value of the contract ($77,984.50) derived by multiplying the stated estimated quantities of work under the thirty-seven (37) separate items by the respective unit price for each item, and the plaintiff was to be allowed no claims for anticipated profits, or loss of profits, or for damage of any sort, because of the difference between the estimated quantities of any item and the amount of such item actually required to be performed, or because of the omission of any of the items;

d. That the work under the contract was to be commenced by the plaintiff within five (5) calendar days and all of the work was to be completed within ninety (90) calendar days after the plaintiff had received the "Notice to Proceed";

e. That plaintiff was to be paid for the actual determined quantities of work performed by it, under the various defined units of work (as contrasted to estimated, agreed or stated quantities);

f. That, subject to the approval of the Contracting Officer, the defendants could have at any time by written order made changes in the drawings and/or specifications and in the execution of the work within the general scope of the contract, and if such changes caused a material increase or material decrease in the amount due under the contract, an equitable adjustment was to be made and the contract modified in writing accordingly, and that no greater or less unit price than the contract price would be paid except upon formal written agreement, and that in the event of termination of the contract, the plaintiff would be paid for the actual quantity of work completed as of the date of termination, if at that time the actual amount of that work exceeded 50 percent of the face amount of the contract, and

if not, the plaintiff was to be paid on an equitable basis;

g. That after final payment under the contract, the matter of the amount of the payment could be reopened for corrections or deductions only on evidence of collusion, fraud or obvious error;

h. That all claims, protests and questions concerning the work under the contract were first to be submitted by the plaintiff in writing, clearly and in detail, to the defendants for their written decision, and thereafter, if the plaintiff was not satisfied with the decision, its complaint, again in writing, was to be submitted clearly and in detail to the Contracting Officer for his rulings, instructions or decisions on such claims, protests or questions, which rulings, instructions or decisions were to be final and conclusive subject to the right of appeal by the plaintiff within thirty (30) days to the Chief of Engineers, whose decision was to be final and binding upon the parties;

i. That the contract was subject to the written approval of the Contracting Officer and was not to be binding until so approved;

j. That the contract was signed for and in behalf of the defendants by F. M. Hines their Construction Manager, and in behalf of the plaintiff, by L. J. Stiers, its President, and was approved on March 31, 1943, for the United States by Lt. Colonel E. E. Taylor, Contracting Officer;

11. That the dispute, involving plaintiff's claim with respect to payment for the "C" line and tunnel work, is of long standing, and, prior to the commencement of this suit, was the subject matter of appeals, first, by the plaintiff to the Contracting Officer from adverse rulings of the defendants, and second, by the plaintiff to the Chief of Engineers from rulings of the Contracting Officer sustaining the defendants; that the matter is now before the Court by reason of the fact that the Chief of Engineers sustained the defendants and the Contracting Officer and, like them, ruled adversely to the plaintiff;

12. That in connection with said dispute the Contracting Officer on May 18, 1943, made the following findings of fact, to-wit:

a. That on March 22, 1943 a meeting was held in the office of the Contracting Officer, at which time the Contracting Officer, a representative of the plaintiff, and

representatives of the defendants were present, and at which time certain agreements were reached with respect to the performance of the disputed work on "C" line and the performance of the tunnel excavation work; that these agreements in effect contemplated that by reason of an advancement of the date for completion of "C" line to April 15, 1943, and by reason of plaintiff's inability to furnish sufficient equipment to complete the line at that time, the defendants would perform the work on "C" line between stations 10∤70.16 and 29∤53 with their own labor and equipment and defendants would, in lieu of plaintiff excavating the tunnel, open cut and backfill the railroad grade at station 8∤50 (which is between stations 8∤01 and 8∤97 and is the approximate location of the tunnel), and that the timber structure and pipe laying in the tunnel would be performed by plaintiff; that plaintiff would not be paid for work on "C" line and would not be paid for excavating the tunnel (excepting a quantity of structural excavation which plaintiff had already performed and which is not in dispute); that this version of the agreements made on March 22, 1943 was approved by the Contracting Officer as his finding of fact of what took place at said meeting;

b. That the defendants on April 2, 1943, notified the plaintiff in writing that defendants would perform the work on "C" line between stations 10∤70.16 and 29∤53 because in the opinion of the defendants, plaintiff "Would be unable to meet the advanced completion date for this line of April 15, and is in accordance with the agreements reached between the A–E–M, (the defendants) and you, (the plaintiff) and the Area Engineer at a meeting in his office March 22.";

c. That the substance of the oral agreements of March 22, 1943 as recited in subparagraph a. of paragraph 12 above, were set forth in writing by the defendants, as their position in the matter, in a letter to the plaintiff dated April 20, 1943;

d. That on April 21, 1943, the plaintiff, by letter, objected to defendants' failure to pay for tunnel excavation; that in this letter the plaintiff did not except to, or reserve rights in connection with, the failure of defendants to make any payment for "C" line work;

e. That by letter of April 24, 1943 the plaintiff protested the ruling of the defendants contained in their letter of April 20, 1943, (item c. of this paragraph) but in so doing, plaintiff conceded that it had agreed at the March 22 conference that "C" line would be constructed by defendants "although all of the applicable subcontract requirements were to be observed" and stated that it was plaintiff's understanding that as to the tunnel excavation, the plaintiff was to be paid for excavating the tunnel from which was to be deducted defendants' costs (in contravention of the Contracting Officer's statement of the agreement as recited in subparagraph a. of paragraph 12 above); that it was the plaintiff's position, in this letter of April 24, 1943, that it was not responsible for completion of "C" line by April 15, 1943, and, therefore, could not be penalized for that development, and that it had been delayed through the fault of defendants from commencing work until March 10, 1943 although allowed and required under its contract to begin work within five (5) days of February 26 (or on March 3);

f. That in reply to the letter of the plaintiff of April 24, 1943, the defendants, by their letter of May 5, 1943, reiterated their position with respect to their refusal to make the payment demanded and further stated that the plaintiff's failure to commence work was due to its own delays in furnishing equipment;

g. That on May 7, 1943, the plaintiff again wrote to the defendants re-asserting, in effect, its right to payment for the excavating of the tunnel, but again failed to make any claim for payment on the "C" line work;

h. That thereafter, and on May 11, 1943, the plaintiff, by letter, appealed from the rulings of the defendants to the Contracting Officer, in which letter, plaintiff contended that it had been ready, willing and able to commence work within the five (5) day period allowed by its contract, but was unable to do so because "certain materials and surveys were not made available", through no fault of the plaintiff, until March 10, 1943; further contended that at the March 22 meeting, plaintiff, was advised that defendants had received instructions to finish "C" line by April 15, 1943, and that this date was prior to the ninety (90) calendar days (from February 26, 1943) within which plaintiff was to complete the work; further contended that it was the under-

standing of the plaintiff that an equitable adjustment would be made for the deletion from the contract of the "C" line work between stations 10/70.16 and 29/53; further contended that at the March 22 conference, plaintiff was also notified by the defendants that defendants would perform the tunnel excavating and back-filling between stations 8/01 and 8/97 with their own forces and equipment, and that the plaintiff would be paid for the work less the defendants' costs expended in connection therewith, and stated that the reason advanced by defendants for the "alteration of the contract" was defendants' opinion that plaintiff would be unable to complete the project within the ninety (90) day period;

13. On May 18, 1943, the Contracting Officer, on the basis of the finding of fact recited in paragraph 12 above, entered his written decision in the form of a letter to the plaintiff in which he ruled adversely to the plaintiff in the following words, to-wit:

"The method of payment for the work to be accomplished by the A.E.M. was set out in the A.E.M.'s letter of April 20, 1943, to you. This method was approved by the Contracting Officer. Any other method of payment could not have been approved by the Contracting Officer under the terms of your subcontract.

In view of the foregoing, it is the ruling of the Contracting Officer that you are not entitled to any reimbursement under your subcontract unit prices for the work accomplished by the A.E.M., as set forth in your letter of May 11, 1943, to the Contracting Officer."

14. Within the 30-day limit allowed for appeals, as provided for in the contract and specifications, the plaintiff submitted the disputed matters to the Chief of Engineers, who, thereafter, and on November 10, 1943, sustained the decision of the Contracting Officer recited in paragraph 13 above, and, in connection therewith, made the following finding of fact in the premises: "It appears * * * that because of lack of equipment it was mutually agreed between the parties that the A–E–M would construct the 'C' Line System from Stations 10/70.16 and 29/53 and that the A–E–M would in lieu of the tunnel excavation specified for going through railroad fill at Station 8/50, open cut and backfill the grade except that portion of the work already done by the subcontrac-

tor. Therefore, the work for which compensation is claimed at contract unit prices was deleted from the contract by mutual agreement."

15. The Court finds that the decisions and findings of the Contracting Officer and the Chief of Engineers, as the same are recited in paragraphs 12, 13, and 14 above, were not made or found arbitrarily or unreasonably.

16. It appears from an examination of plaintiff's submission of the dispute to the Contracting Officer and to the Chief of Engineers, and the Court so finds, that the plaintiff did not, at any time, suggest, or submit evidence to support, the amount of the equitable adjustment to which it laid claim by reason of the deletion of the "C" line work between stations 10/70.16 and 29/53, and for which it now seeks judgment; and that the amount of its claim, in the form of the reasonable profit it allegedly would have made had it performed the deleted work, appears for the first time in this lawsuit. It further appears from an examination of the submission, and the Court so finds, that the plaintiff, in submitting the matter of the deletion of the tunnel work to the Contracting Officer and the Chief of Engineers, relied upon the alleged oral agreement of March 22, 1943, and demanded the difference between its contract price for boring the tunnel, and defendants' costs for open cutting and backfilling in lieu of boring; and that the plaintiff failed to present to those officers, any evidence whatsoever of what its costs would have been, or what its profit, if any, would have been, had it performed the work of boring the tunnel.

17. The matter of the counterclaim interposed by the defendants, was not submitted to the Contracting Officer nor to the Chief of Engineers but was first asserted against the plaintiff in this lawsuit, but it appears from the pleadings, affidavits and admissions of counsel, and the Court so finds, that the work for which defendants seek payment through the counterclaim was actually performed for the plaintiff by the defendants; that defendants have not been paid therefor; that the sum of $863.19 is the reasonable value of that work; that the failure of plaintiff to pay for said work grew entirely from an error in that defendants had failed to assess the charge against the plaintiff in their final settlement with the plaintiff for the work performed; that no

dispute ever existed or now exists with respect thereto; and that the error in not charging the plaintiff for the work was not discovered until long after the settlement for work performed and after the commencement of this action.

18. The Court finds further that by their admissions in the pleadings, in their affidavits in support of their motions for summary judgment, and in the answers to interrogatories, and by the admissions of respective counsel for the parties, the foregoing facts have been, and are, agreed to by the parties, and that there is no genuine issue of fact now remaining between them for further trial.

### Opinion.

This is an action in which the Court, in effect, is required to construe a construction contract and is requested by the plaintiff to review and revise findings of fact in the premises made by the Contracting Officer and/or the Chief of Engineers under the "disputes clause" thereof, and to enter judgment accordingly.

■ With respect to the facts, the Court is entirely without jurisdiction to review or revise the same. It has been repeatedly held by federal courts, including the Supreme Court of the United States, and the rule is well established, that where parties to a construction contract have designated a person to be the final arbiter of disputed questions between them—and such is the case here—those parties are bound by that arbiter's determination of the disputed questions of fact and they have no other avenue of relief except in case of fraud or gross error amounting to fraud, and the arbiter's determination of the facts, once made, is not subject to the revisory powers of the courts. United States v. Algernon Blair, et al., 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039; United States v. Callahan-Walker Construction Co., 317 U.S. 56, 63 S.Ct. 113, 87 L.Ed. 49; United States, for Use of Chamberlain Metal Weatherstrip Co., Inc., v. Madsen Const. Co., 6 Cir., 139 F. 2d 613; 54 A.L.R. 1256; 110 A.L.R. 138. This is true, notwithstanding that the arbiter is a person who is, or may be, an agent of one of the parties. Goltra v. Weeks, Secretary of War, et al., 271 U. S. 536, 46 S.Ct. 613, 70 L.Ed. 1074.

■ Therefore with respect to the dispute between the parties concerning the "C" line and tunnel work, there being no showing of fraud or gross error, the Court must take as true, and is bound by, the finding of fact of the Chief of Engineers, the designated arbiter, to the effect that the work had been deleted from plaintiff's contract by mutual agreement of the parties due to lack of equipment.

■ Under this state of the facts, whether or not the plaintiff is entitled to relief, depends upon the terms of the contract. This is a question of law, and with respect to such questions, it has been held that whereas the parties to a construction contract are competent to provide for the ultimate finality and binding effect of an arbiter's determinations as to questions of fact, they are not competent in this respect as to questions of law, S. J. Groves Sons' v. Warren, 77 U.S.App.D.C. 347, 135 F.2d 264; certiorari denied 319 U.S. 766, 63 S.Ct. 1327, 87 L.Ed. 1716, and the Court, therefore, may examine into questions of law without regard to the fact that the Contracting Officer and/or the Chief of Engineers have decided the same.

■ The Court has found that under the terms of the contract, plaintiff was entitled to payment for actual quantities of work it performed at its contract prices, and, furthermore, the quantities could vary or items of work be omitted to the extent that payment to the plaintiff could vary from 50 percent to 150 percent of the face value of the contract, and that plaintiff would be "allowed no claims for anticipated profits, or loss of profits, or for damage of any sort because of differences between the estimate of any item (of work) and the amount of any item actually required, or because of omission of any item". The Court has also found that plaintiff has been fully paid—in fact, has been overpaid by the amount of defendants' counterclaim—for all work it actually performed and that the amount of such payment exceeded 50 percent of the face value of the contract. The Court concludes, therefore, that plaintiff having been fully paid and the disputed work having been deleted or "omitted" from the contract by mutual consent of the parties, the plaintiff is not entitled to any additional compensation.

■■ Plaintiff contends, however, that the elimination of the "C" line and tunnel work amounts to an enforced change or modification in the scope of the contract

within the meaning of the clause that provides for an equitable adjustment to be made, should such a change or modification be ordered. The Court for other reasons, having found that plaintiff is not entitled to any compensation by reason of the elimination of the work does not, of course, agree with this contention of the plaintiff, but in connection therewith, and assuming for the purpose of the following, that plaintiff's contention is correct, the Court points out that the matter of the amount of a possible equitable adjustment again poses a "question of fact" and, as such, the determination of the amount, is exclusively and conclusively for decision and determination by the Contracting Officer, subject only to plaintiff's right to appeal to the Chief of Engineers. This specific question was presented to the Supreme Court in the case of United States v. Callahan-Walker Construction Company, supra, and the Supreme Court in that case, stated that the amount of an equitable adjustment, under a clause providing for such an adjustment, was a question of fact to be determined by the arbiter chosen by the parties.

Further, in the Callahan-Walker Construction Co. case, the Supreme Court defined an equitable adjustment, under such a clause, as a reasonable profit added to the contractor's costs. The Callahan-Walker decision resulted from a demand by the contractor for payment for additional work, outside of the scope of the contract, imposed by the Contracting Officer and over which the amount for payment came into dispute. Applying the definition of an equitable adjustment from that case to action case at bar, it appears that if plaintiff is, or was, entitled to an equitable adjustment by reason of the deletion of the disputed work, the amount of such adjustment would have to be based upon the profit, if any, the plaintiff would have earned at its fixed contract prices. In submitting its dispute to the Contracting Officer and later to the Chief of Engineers, the plaintiff at no time presented either of those officers with any factual data, exclusively in its possession, upon which those officers could have determined the amount of an equitable adjustment, if, in fact, they had determined that plaintiff was entitled thereto. The plaintiff in submitting the dispute in connection with the tunnel work, to the Contracting Officer and later, on appeal, to the Chief of Engi-

neers, demanded the difference between its contract price and defendants' costs. This definitely was not a demand for an equitable adjustment as such an adjustment is defined by the Supreme Court. If the plaintiff was entitled to an equitable adjustment by reason of the elimination of the tunnel work, that adjustment, under the definition, would have to be based upon its own probable costs and the reasonable profit, if any, for boring the tunnel with its own labor and equipment.

In submitting the dispute in connection with the "C" line work to the same officers, the plaintiff merely demanded an equitable adjustment without specifying the amount of their demand, and, of course, without justifying their demand by submitting any data whatsoever in connection with its probable costs and reasonable profit, if any, under its contract prices. The contract clearly provides that claims and disputes were to be submitted to those officers "clearly and in detail."

Therefore, neither the Contracting Officer nor the Chief of Engineers, at any time, had any information which would have informed them of plaintiff's costs or the amount of profit the plaintiff would have made on any of the disputed work had it performed the same. For all those officers knew, the plaintiff's prices were such as to result in a financial loss to plaintiff if it had done the work. Profit is not to be presumed. Be that as it may, those matters are questions of fact solely within the jurisdiction of the arbiter set up in the disputes clause of the contract, and this Court is entirely without jurisdiction to pass upon the facts.

Reverting to the tunnel work, plaintiff makes much of an alleged oral agreement between it and the defendants, under the terms of which defendants were to pay plaintiff at its contract price for boring the tunnel first, deducting the amount of defendants' costs for doing the work. As stated before in this opinion, the existence of such an agreement is a question of fact for determination by the arbiter and is not for this Court. However, to clarify the rights of the parties under the law, and without passing upon the efficacy of an oral agreement to change a written contract which provides that changes must be in writing, the Court points out that if the plaintiff was entitled to any consideration by reason of the deletion of the tunnel work, the original

written contract provided a method under and by which such consideration would be given, that is to say, the contract provided for an equitable adjustment in case of change. Hence, since the so-called oral agreement contemplated a form of payment inconsistent and at variance with the principle of equitable adjustment, as established by the Supreme Court, it must be deemed to be a departure from the terms of the written contract itself. As such, to be enforceable, the oral agreement, if otherwise good, must be supported by adequate consideration. No such consideration appears. Hence it is unenforceable as a matter of law. This is axiomatic.

 With respect to defendants' counterclaim, the Court has found that neither the accomplishment of the work of post hole digging by the defendants for the plaintiff, nor its reasonable value, nor that plaintiff has been paid for the same as though it has performed the work, was ever the subject of a dispute between the parties, and, therefore, concludes that the resolution of the same is not to be governed by the "disputes clause" of the contract, and that the Court has jurisdiction to pass upon the question. The amount of the counterclaim is definitely an overpayment which arose from an error in failing to debit plaintiff's account, and, as such, is an "obvious error" within the meaning of the clause in the contract which, by implication, provides that the contract, after final settlement, may be reopened for payment in case of the discovery of such error. Furthermore, the Court has found that the error was not discovered until after the commencement of this law suit. Under Rule 13 (a) of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, the defendants were required to assert their claim in this action as a compulsory counterclaim or be barred from asserting it at a later time. Under the circumstances, and in view of the well-established principle of law that no person is entitled to unjust enrichment, the Court is of the opinion, and concludes, that defendants are entitled to recover the amount thereof.

### Judgment.

It is therefore ordered, adjudged and decreed that plaintiff take nothing by this action, and that defendants have judgment against the plaintiff in the amount of $863.19 on their counterclaim, together with their costs expended in this action, with interest on the amount of the judgment at the rate of six percent per annum from April 7, 1945, and, further, that any unpaid costs be taxed against the plaintiff. Accordingly, let execution issue.