**WORK, Secretary of the Interior, v. UNITED STATES ex rel. RIVES.**

(Court of Appeals of District of Columbia. Submitted October 5, 1923. Decided January 7, 1924.)

No. 4020.

**1. United States ⬤99—Loss of money paid "for" property which contained manganese held allowable claim.**

Loss of amount paid for property which contained manganese *held* within Act March 2, 1919, § 5, as amended by Act Nov. 23, 1921 (Comp. St. Ann. Supp. 1923, § 3115$^{14}$/$_{15}$e), authorizing payment of net losses resulting from producing or preparing to produce manganese for war needs, but limiting allowable claims to expenditures made "for" or on property containing manganese, as "for" means "for the benefit of," or "for the use of," or "in consideration of."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, For.]

**2. Statutes ⬤217—Statute must be ambiguous, to authorize resort to congressional debates.**

Reference may be had to the reports of committees of either house, and even to debates in Congress, to aid in the interpretation of an ambiguous measure; but such sources of information are not available, where the measure is unambiguous.

**3. United States ⬤127—Mandamus to compel officer to act on claim not action against United States.**

A mandamus proceeding to compel the Secretary of the Interior to exercise the power vested in him by Congress to act on a claim is not an action against the United States, requiring its consent to be sued.

**4. Mandamus ⬤72—Court may require officer to act.**

Where the Secretary of the Interior takes jurisdiction, and asserts his judgment over the matter to which the jurisdiction extends, a court cannot control his action by mandamus; but this doctrine does not apply, where he refuses to act on the assumption that he has no jurisdiction.

**5. United States ⬤114—Acceptance of award by claimant as to some items no bar to relief as to rejected item.**

Where Secretary of the Interior did not go into the merits of one item of a claim, under Act March 2, 1919 (Comp. St. Ann. Supp. 1919, § 3115$^{14}$/$_{15}$e), on the ground that he was not authorized to do so, acceptance of an award by claimant as to other items does not bar relief as to that item, especially where the rejection of such item was contrary to the provisions of the amendatory Act of November 23, 1921 (Comp. St. Ann. Supp. 1923, § 3115$^{14}$/$_{15}$e).

Appeal from the Supreme Court of the District of Columbia.

Mandamus by the United States, on the relation of Logan Rives, against Hubert Work, Secretary of the Interior. From a judgment awarding mandamus, the Secretary of the Interior appeals. Affirmed.

C. Edward Wright, of Washington, D. C., for appellant.

Leslie C. Garnett, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BAILEY, Justice of the Supreme Court of the District of Columbia.

SMYTH, Chief Justice. The Secretary of the Interior appeals from a judgment of the Supreme Court of the District of Columbia, awarding a mandamus against him, by which he is directed to take jurisdic-

tion of a claim filed with him by the relator, Logan Rives, under section 5 of the Act of Congress approved March 2, 1919 (40 Stat. 1272), as amended by the Act of November 23, 1921 (42 Stat. 322 [Comp. St. Ann. Supp. 1923, § 3115¹⁴/₁₅e]).

[1] By section 5 just mentioned, before it was amended (Comp. St. Ann. Supp. 1919, § 3115¹⁴/₁₅e), the Secretary was authorized "to adjust, liquidate, and pay such net losses as have been suffered by any person, * * * by reason of producing or preparing to produce * * * manganese, * * * in compliance with the request or demand of the Department of the Interior, * * * to supply the urgent needs of the nation in the prosecution of the war," and to "make such adjustments and payments in each case as he shall determine to be just and equitable." It is further provided that no claim shall be allowed or paid "unless it shall appear to the satisfaction of the * * * Secretary that the expenditures so made or obligations so incurred by the claimant were made in good faith for or upon property which contained * * * manganese * * * in sufficient quantities to be of commercial importance," and his decision is made "conclusive and final" by the act.

The relator stated that during the months of June and July, 1918, in preparing to produce manganese in compliance with the request of the Department of the Interior to supply the urgent needs of the nation in the prosecution of the war, he agreed to buy two tracts of land situated near Batesville, Ark., containing manganese in sufficient quantities to be of commercial importance, and made initial payment on the purchase of $9,600; that upon the signing of the Armistice there was due by the petitioner on the purchase price of the land the sum of $11,-000, but, since there was then no further demand for manganese, the land was not worth to exceed $1,000; that to save himself further loss he elected under his contract to purchase to lose as liquidated damages the sum which he had paid on the purchase, namely, $9,600, and that this sum was a net loss to him. He filed with the Secretary under the act just mentioned a claim embodying several items, which aggregated $55,204.15. Among them was the $9,600 item. The Secretary allowed a number of the items, but rejected the one for $9,600. In accepting the award and requesting payment thereof, the relator stated that he did not waive any right to further award under any additional remedial legislation which might be passed, and which might permit further payment. Payment for the allowed items was made to the relator.

After this Congress amended the act by adding thereunto the following:

"That all claimants who, in response to any personal, written, or published request, demand, solicitation, or appeal from any of the government agencies mentioned in said act, in good faith expended money in producing or preparing to produce any of the ores or minerals named therein and have heretofore mailed or filed their claims or notice in writing thereof within the time and in the manner prescribed by said act, if the proof in support of said claims clearly shows them to be based upon action taken in response to such request, demand, solicitation or appeal, shall be reimbursed such net losses as they may have incurred and are in justice and equity entitled to from the appropriation in said act. If in claims passed upon under said act awards

have been denied or made on rulings contrary to the provisions of this amendment, or through miscalculation, the Secretary of the Interior may award proper amounts or additional amounts."

Subsequent to the passage of this amendment relator asked for a rehearing with respect to the $9,600 item and other items. The rehearing was granted, and the Secretary went into the whole matter anew. He held against the relator on the ground that the money spent in the purchase of the real estate was not repayable as a loss under the law, either as originally passed or in the amendatory form. With respect to these facts there is no dispute between the parties.

The statute authorized the Secretary to pay such net losses as were suffered by any person by reason of producing or preparing to produce manganese, etc. In purchasing this land the relator was preparing to produce manganese. This is admitted. The statute further says that no claim shall be allowed unless it shall appear that the expenditures made by the claimant "were made in good faith for or upon property which contained * * * manganese," etc. It is said that money paid in acquiring property for that purpose was not paid "for" property within the meaning of the statute. The controversy seems to turn upon the meaning of the word "for." In his opinion rejecting the claim the Secretary said that to adopt the view "that the word 'for' means 'for the purchase of property' would exclude" other claims that should be allowed. We do not think this would follow, because the word "for" has many significations according to the lexicographers. In one relation it may mean, as the Secretary says, "for the benefit of," or "for the use of," and in another, "in consideration of." Webster says that in the most general sense it indicates "that in consideration of which * * * anything is done or takes place." The expenditure of the $9,600 was in consideration of the property, therefore was made "for" it. It is a very common thing to say that so much money was paid for this or for that, meaning thereby that it was the consideration passed for the thing mentioned. We are satisfied that under the statute it was the intention of Congress to allow for losses incurred by reason of money paid for property which contained manganese.

[2] Much significance is given to what took place on the floor of the Senate when the bill was being considered, and it is said that because of this the word "for" must be given the restricted meaning attributed to it by the Secretary. But how are we to know whether the same view was taken by the House of Representatives when the bill was before that body? Anyhow it is immaterial. While reference may be made to reports of committees of either house, and even to debates in Congress, for the purpose of aiding in the interpretation of an ambiguous measure (United States v. St. Paul, M. & M. Ry. Co., 247 U. S. 310, 318, 38 Sup. Ct. 525, 62 L. Ed. 1130, and Wisconsin R. R. Commission v. Chicago, B. & Q. R. R. Co., 257 U. S. 563, 589, 42 Sup. Ct. 232, 66 L. Ed. 371, 22 A. L. R. 1086), there is no authority for consulting those sources of information, where, as here, there is no ambiguity. See authorities just cited. In this case the effect of going to the proceedings of Congress would be to create a doubt where none existed before, and this is not allowable. Wisconsin R. R. Commission v. Chicago, B. & Q. R. R. Co., supra, p. 589 (42 Sup. Ct. 232).

[3] We are urged to hold that this is an action against the United States, and that since they have not consented to be sued with respect to the matter it cannot be maintained. To this view we cannot yield. The action relates simply to the question as to whether or not the Secretary has failed to exercise a power vested in him by Congress. It does not seek to direct him to allow or pay a penny. Such an action in no wise affects the United States. The circumstance that our ruling may result in a finding by the Secretary in favor of the relator is of no importance. It would be merely an accidental. With reference to a situation like this, the Supreme Court of the United States, in awarding a mandamus to compel the Interstate Commerce Commission to entertain and proceed to adjudicate a cause, said:

"The unusual and purely fortuitous circumstance, that the character of this jurisdictional limitation on the power of the Commission chances to be such that the giving of a correct construction to it must result in determining the character of the decision which the Commission must render when the case is returned to it, cannot affect the power of this court or that of the lower courts to define what that jurisdiction is under the act of Congress or the duty of the Commission to accept and act upon such definition when announced." Louisville Cement Co. v. Interstate Commerce Commission, 246 U. S. 638, 644, 38 Sup. Ct. 408, 410 (62 L. Ed. 914).

[4] What we have said meets another contention made by the Secretary, viz. that in rendering his decision construing the statute he was exercising his judgment, and that, as there is some basis for that judgment in the statute, the courts have no power to control his action. While this doctrine is sound where the Secretary takes jurisdiction and then exerts his judgment over the matter to which the jurisdiction extends, it does not apply where he refuses to act on the assumption that he has no power or jurisdiction over the subject-matter. In the case of Louisville Cement Co. v. Interstate Commerce Commission, supra, the Commission refused to allow a claim because, as stated, it had not been filed in time under the statute. The court held that it had been, and granted the writ of mandamus to compel the Commission to entertain and proceed to adjudicate the claim. That is what the court below did in this case.

Another decision which bears on the point is that of Work, Secretary of the Interior, v. Mosier, 261 U. S. 352, 43 Sup. Ct. 389, 67 L. Ed. 693. There the question was as to whether or not, under a statute, bonuses paid for oil lands were distributable as rents or as royalties. The relators alleged that the Secretary had placed a wrong construction upon the statute. The court said that the determination of the question was not "a matter of discretionary construction by the Secretary," but was a matter "determinable in court at the instance of the beneficiaries as of right." So here the question as to whether or not money paid for manganese land comes within the purview of the statute is a matter of statutory construction, not finally intrusted to the discretion of the Secretary, but determinable in court at the instance of the claimant. This case was followed in Work v. United States, on the relation of McAlester-Edwards Coal Co., 262 U. S. 200, 43 Sup. Ct. 580, 67 L. Ed. 949, where the Secretary, construing a statute, denied the right of the coal company to make payments for certain lands and to have a patent issued therefor. The Secretary insisted that since his construc-

tion of the statute had some basis therein, it was not reviewable by the courts. This court took a different view of the matter (277 Fed. 573, 51 App. D. C. 171), and was sustained by the Supreme Court of the United States. These decisions represent the latest expressions of the Supreme Court of the United States on the subject, and are binding upon us.

[5] The acceptance of the amount awarded to the relator did not bar him from relief with respect to the $9,600 item. The Secretary granted a rehearing after the acceptance, reconsidered his decision touching the matter, and rejected the item anew. He did not think that the relator was barred from a rehearing by the acceptance, or, if he did, he waived the bar and proceeded as if it had no existence. If the Secretary had taken jurisdiction of the claim, and had rejected it in whole or in part, on the ground that it did not represent a loss incurred by Rives on account of money paid for manganese property, there would be force in the contention that, having accepted the decision of the Secretary, he had no right to reopen the matter. But that is not the situation. The Secretary, as we have said, did not go into the merits of the case at all, but simply refused to touch it, on the ground that he was not authorized to do so.

Apart from that, the amendatory act provides in substance that all claimants who in good faith expended money in producing or preparing to produce any of the ores or minerals named should be reimbursed for such net losses as they had incurred, and that if, in claims passed upon under the original act, awards had been denied on rulings contrary to the provisions of the amendment, the Secretary might award proper amounts, or additional amounts. In this case the rulings of the Secretary rejecting relator's claim were contrary to the provisions of the amendment, which, as we have just seen, provided that persons who in good faith expended money in preparing to produce minerals should be reimbursed for such net losses as they had incurred. In view of these considerations, we do not think relator was barred by the acceptance.

The decision of the trial court in awarding the mandamus is free from error, and it is therefore affirmed, with costs.

Affirmed.

Motion for writ of error to Supreme Court of the United States granted January 26, 1924.