WILBUR, SECRETARY OF THE INTERIOR, *v.* U. S. EX REL. VINDICATOR CONSOLIDATED GOLD MINING CO.*

No. 66.  Argued October 28, 29, 1931.—Decided Dec. 7, 1931.

---

* Together with No. 67, *Wilbur, Secretary of the Interior,* v. U. S. *ex rel. Chestatee Pyrites & Chemical Corp.*

232

*Assistant Attorney General Richardson,* with whom *Solicitor General Thacher* and *Messrs. Whitney North Seymour, G. A. Iverson,* and *E. C. Finney* were on the brief, for petitioner.

*Mr. Edgar Watkins,* with whom *Messrs. Marion Smith, Mac Asbill,* and *J. C. Trimble* were on the brief, for respondents.

MR. JUSTICE BUTLER delivered the opinion of the Court.

## No. 66

May 31, 1919, the relator, under § 5 of the Act of March 2 of that year, 40 Stat. 1272, known as the W ir Minerals Relief Act, filed with the Secretary of the Interior a claim for net losses alleged to have been suffered by reason of producing or preparing to produce chrome in compliance with the request of the Secretary. The claim included an item of $16,259 asserted to be a net loss by

reason of the expenditure of that amount for the purchase of land upon which the mine was located. Relator still holds the title. May 15, 1922, the Secretary held that under the Act he was not authorized to adjust or pay losses by reason of expenditures for the purchase of property, and on that ground denied any award on account of that item.

In *Work* v. *Rives* (1925), 267 U. S. 175, we held that the Act made the Secretary's decisions conclusive. But Congress, by the Act of February 13, 1929, 45 Stat. 1166, authorized the Supreme Court of the District of Columbia to review the final decision of the Secretary upon any question of law which had arisen or might thereafter arise in the adjustment of such claims, expressly leaving his decisions on questions of fact conclusive.

February 18, 1929, relator sued for a writ of mandamus directing the Secretary to take jurisdiction and to adjust and pay relator its net losses suffered by reason of the purchase of such property. The court held the Secretary rightly decided the question of law and dismissed the petition. The Court of Appeals, following its earlier decision in *Work* v. *United States*, 295 Fed. 225 (reversed here on the ground that under the Act of 1919 the Secretary's construction was not subject to review) held the Secretary erred in law and reversed the judgment. 47 F. (2d) 422. This court granted a writ of certiorari. 283 U. S. 817.

The question for decision is: To what extent, if at all, does the statute empower the Secretary in respect of net loss incurred by relator by reason of its expenditure for such land?

During the World War certain mineral substances and products, including chrome, became essential to the nation's defense. The need having become very great, Congress by the Act of October 5, 1918, 40 Stat. 1009, declared a large number of such materials to be necessaries, em-

powered the President, through such agencies as he should designate, to acquire and distribute the same and also to requisition, develop and operate lands, mines and plants capable of producing them, and appropriated $50,000,000 to carry out the purpose of the statute. The Armistice, November 11, 1918, ended the emergency.

By § 5 of the Relief Act the Secretary is empowered " to adjust . . . and pay such net losses as have been suffered by any person . . . by reason of producing or preparing to produce either, manganese, chrome, pyrites, or tungsten in compliance with the request or demand of the Department of the Interior, the War Industries Board, the War Trade Board, the Shipping Board, or the Emergency Fleet Corporation to supply the urgent needs of the Nation in the prosecution of the war . . . " · And the section limits the authority of the Secretary to such " adjustments and payments in each case as he shall determine to be just and equitable." It requires that all disbursements shall be made out of funds appropriated by the Act of 1918, and shall not exceed $8,500,000. A proviso declares that no claim shall be allowed or paid unless it shall appear to the satisfaction of the Secretary that the expenditures so made were made in good faith " for or upon property which contained either manganese, chrome, pyrites, or tungsten in sufficient quantities to be of commercial importance."

The Act of November 23, 1921, 42 Stat. 322, amends and broadens § 5 of the Relief Act by adding to its first paragraph a provision that " all claimants who, in response to any personal, written, or published request, demand, solicitation, or appeal from any of the Government agencies mentioned in " the Act of October 5, 1918,[1] " in good faith expended money in producing or preparing to produce any of the ores or minerals named therein and have

---

[1] " . . . officer or officers, department or departments, board or boards, agent, agents, or agencies as he [the President] shall create or designate from time to time." See § 7, 40 Stat. 1011.

heretofore mailed or filed their claims or notice in writing thereof within the time and in the manner prescribed by said Act, if the proof in support of said claims clearly shows them to be based upon action taken in response to such request, demand, solicitation or appeal, shall be reimbursed such net losses as they may have incurred and are in justice and equity entitled to from the appropriation in said Act." And by the Act of June 7, 1924, 43 Stat. 634, the limitation of the aggregate amount to be disbursed under the Act of 1919 was repealed.

Section 5, the proviso referring to expenditures " for or upon property " containing the minerals, and the amendment of 1921 are plainly broad enough to include net losses resulting by reason of expenditures for the purchase of property and leave no room to doubt that it was the purpose of Congress to empower the Secretary to take them into account in arriving at the amount, if any, to be allowed and paid.

The petitioner argues that the phrase " such net losses as have been suffered " excludes claims where, at the time of the enactment, the purchaser still retained title to the property. But the net losses mentioned are not thus limited. Losses by reason of expenditures for property, real or personal, still owned by claimants are not excepted. The purpose is merely to reimburse; loss resulting from speculative investments is excluded; allowance of profits is forbidden. In determining actual net loss the value of the property purchased and retained by claimant is necessarily to be taken into account. The construction for which petitioner contends necessarily rests upon the hypothesis that one may not suffer loss by reason of expenditures for land while he continues to own it. No such assumption can be entertained, for it is everywhere known that the contrary is true, and that the value of lands and plants purchased and constructed to produce

minerals and other things needed wholly or principally to carry on the war was liable to, and in fact generally did, greatly and permanently decline when the struggle ended. And, in support of his contention, petitioner invokes history of the legislation, but that is not here permissible, for the language and meaning of the statute in respect of the question under consideration are clear. *United States* v. *Missouri Pacific R. Co.*, 278 U. S. 269, 278.

The conclusion is plain. The Secretary is required to proceed to ascertain whether relator, on March 2, 1919, had incurred net loss by reason of the expenditure of $16,259 for such land; and, if he shall find that relator has suffered such a loss, then the Secretary, having regard to the safeguards and limitations specified in the statute, shall determine how much, if any, of the net loss so found the relator is " in justice and equity entitled to from the appropriation in said Act."

## No. 67

March 5, 1919, relator filed with the Secretary of the Interior a claim for losses by reason of expenditures for the production of pyrites under the conditions specified in § 5. The claim included items of interest on money borrowed, so expended and lost by relator. The Secretary and his successors, including petitioner, have uniformly held that the statute prohibits any award on account of such interest and have disallowed all claims therefor. After the passage of the Act of 1929, relator brought this suit for mandamus to compel the Secretary to take jurisdiction and allow such interest.[2] The court held the

---

[2] An earlier application for mandamus was granted by the Supreme Court. The Court of Appeals affirmed. 298 Fed. 839. But this court reversed (267 U. S. 185) following its contemporaneous decision in *Work* v. *Rives*, 267 U. S. 175.

Secretary rightly construed the statute and dismissed the petition, the Court of Appeals reversed, 47 F. (2d) 424, and we granted a writ of certiorari, 283 U. S. 817.

The amount of interest that at the time of the passage of the Relief Act March 2, 1919, had been paid or incurred by relator for money borrowed and lost in producing and preparing to produce pyrites upon the specified conditions is to be taken into account in determining the amount of its net loss as of that date. It constitutes a part of relator's expenditures and cost of the undertaking and so is within the terms of the section as amended. *United States* v. *New York,* 160 U. S. 598, 621–624. But the mere fact that such interest was lost does not entitle relator to have, or warrant the Secretary in allowing, any part of it. It must be shown clearly that such interest was paid or the obligation incurred by relator at the instance of one of the specified governmental agencies. And the Secretary, upon a consideration of all the circumstances and with due regard to the provisions of the section as amended, must be satisfied, and determine as a matter of fact, that an allowance on account of such interest is just and equitable and that the loss is one for which relator in justice and equity is entitled to be reimbursed from the appropriation.

As we sustain the construction placed upon the statutes by the Court of Appeals, the cases will be remanded to the Supreme Court of the District of Columbia with directions to award a writ of mandamus requiring the Secretary of the Interior to proceed to an examination and adjustment of the claim in question conformably to the statutes as here construed. Subject to this direction the judgment of the Court of Appeals in each case is

*Affirmed.*