**ARKO MINING CO. v. ICKES, Secretary of the Interior.**

No. 5974.

United States Court of Appeals for the District of Columbia.

Argued May 8, 1934.

Decided June 25, 1934.

T. S. Plowman, of Washington, D. C., for appellant.

Charles Fahy, Victor H. Wallace, and J. Kennard Cheadle, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

The appellant, Arko Mining Company, an Arizona corporation, was incorporated April 22, 1918, and immediately thereafter, in response to a request from the United States government, commenced mining operations in Crow Wing county, Minn., through a mining lease purchased for that purpose. The leased property contained a large body of manganiferous iron ore which had been tested by drilling through the same; hence the property was in practically fair condition for appellant company to proceed with the production of ore in sufficient quantities to be of commercial importance. It is conceded that appellant was stimulated within the meaning of the Act of March 2, 1919, 40 Stat. 1272.

The funds for the purchase of the lease, plan, equipment, etc., were obtained by the sale of stock and from the ore produced. Up to the date of the Armistice, 733 tons were sold. The production was incidental to the sinking of the main shaft, and the opening up to the ore body by drifts and crosscuts. The government auditor reported that $76,-298.98 had been expended up to the date of the Armistice.

After the Armistice, the company attempted to continue the development of the ore body, with a total loss prior and subsequent to the Armistice of approximately $150,000. This money was raised through the sale of stock during 1918, 1919, and 1920. The demand for the ore ceased at the signing of the Armistice, but the work was continued in the hope that a market could be found for the ore. Only two carloads were shipped during 1919, and these were in exchange for coal. By 1920 the company became hopelessly involved, and, through failure to keep up the advance royalty payments under the terms of the lease, the company was served with notice of cancellation of the lease.

The items in appellant's claim involved in this appeal and which were disallowed by the Secretary, are as follows: "Purchase of a mining lease, $12,000.00; payment, and drill-prospecting, $1,616.55, claimed as part of purchase price, and disallowed on the ground that the War Minerals Relief Act 'does not contemplate reimbursement for amounts paid for purchase of property or mining rights.'"

Payment of interest on borrowed money, $98.91; discount on Liberty bonds, $180.41; incorporating expenses, $453; incorporation

and promotion, $364.69; stock sales and commissions, $4,121; general expense (promotion, etc.), $2,680.71. These items were disallowed on the ground that they were not within the contemplation of the statute.

Payment of officers' salaries, $3,183.32 claimed, on which $1,560 subsistence was allowed. The disallowance of the balance of this item was based on the ground that a claim only for subsistence allowance was proper and allowable.

Development, $34,104.40; less $11,280.-87, allowed; leaving a net disallowance of $22,823.53. Equipment, $12,165.42, claimed, less $2,433.08, representing 20 per cent. depreciation, which was allowed, leaving a net disallowance of $9,732.34. The disallowance for equipment was based upon a prorating of the development cost plus the cost of actual production prior to November 11, 1918, the date of the Armistice, and the development cost plus the cost of actual production subsequent to that date. The item for equipment, less the amount allowed for depreciation, was disallowed on the ground that "the allowance of 20% for depreciation seems equitable." This was based upon the condition of the equipment at the time of the Armistice, and its condition for further operations conducted subsequent to the stimulation period.

On these items, the Commissioner in his opinion, said: "The shaft was driven through an ore bed, and practically all of the ore produced during the stimulation period was obtained by the sinking of the shaft and the driving of sublevels. Following the Armistice, ore yielding more than $6,000.00 was produced. The cost of development, therefore, should be distributed over the total production to date. While the development cost has been deducted in full from the claim, an allowance has been made for the prorated development cost, plus the cost of actual production before November 11, 1918, on the basis of the unit cost of production as estimated by the superintendent of claimant. Under the particular facts and circumstances of this case, all this seems proper. A total allowance of the cost of sinking of the shaft, as contended for by claimant's attorney, should not be sustained. The total cost in that particular was not devoted to operations under Government stimulation. Claimant afterwards made use of such cost in its own behalf. It adopted the shaft for its own supposedly profitable purposes after the Armistice. On the strength of its value for such purposes, it sold additional stock and enhanced its assets. In other words, it took

over the shaft, not as within any stimulated losses, but as saved from such losses, for the purpose of devoting it to a venture with which the Government had nothing to do, and which venture started at a time beyond the period for which the act authorizes losses to be compensated."

It is conceded by appellee Secretary that he committed error of law, in view of the decision of the Supreme Court in Wilbur v. United States ex rel. Vindicator Consolidated Gold Mining Co., 284 U. S. 231, 52 S. Ct. 113, 76 L. Ed. 261, in deciding that the act did not contemplate reimbursement for the losses appellant claimed by reason of expenditures made in the purchase of an option and lease. It is also conceded that, in view of the decision of the Supreme Court in Wilbur v. United States ex rel. Chestattee Pyrites & Chemical Corporation, 284 U. S. 231, 237, 52 S. Ct. 113, 76 L. Ed. 261, interest which, at the time of the passage of the Relief Act, March 2, 1919, had accrued or had been paid for money borrowed and lost in producing or preparing to produce a war mineral, is an item of loss within the contemplation of the act. As to these matters, it is conceded by the Secretary that this case should be reversed and remanded for further adjustment.

Coming now to the items of discount on Liberty bonds, incorporation expense, incorporation and promotion, stock sales and commissions, general expense (promotion, etc.), we agree with the court below that these are not items which, as matter of law under the statute, are allowable. The Liberty bonds were received at par in payment for stock, and later discounted by the company for the purpose of procuring cash. It was more in the nature of a capital transaction, and, as such, not allowable. The expenses of incorporation, stock sales and commissions were likewise in the nature of expense incurred in preparation for, and as a condition precedent to entering into this enterprise, and not as expense incurred upon the property, as required by the act. The item "general expense" is so indefinite that it would require proof to determine what actually was included under this head; and, in the absence of evidence on this point, it will be assumed that the Secretary disposed of this item on the facts before him; and, as the authority vested in the courts to review is confined solely to questions of law, the court is bound by the provision of the amendatory Act of February 13, 1929, 45 Stat. 1166 (50 USCA § 80 note), which provides that "the decision of the Secretary of the Interior on all ques-

tions of fact shall be conclusive and not subject to review by any court."

Coming now to the items of payment of officers' salaries, development, and equipment, we think the action of the Secretary as to these items must be approved. Again the conclusions of the Secretary are based upon issues of fact which recognize the justice of these respective claims in part; and, in so far as allowed, the action of the Secretary is in conformity with the law. Wilbur v. United States, 288 U. S. 97, 53 S. Ct. 293, 77 L. Ed. 638.

In view of the conceded errors, and the further consideration by the Secretary of items disallowed, but which are allowable, but dependent upon issues of fact, the decree of the court below will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.