(C. D. 1868)

INTERNATIONAL EXPEDITERS, INC., ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 10, 1957)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: The suits listed in schedule "A," hereto attached and made a part hereof, present for determination the question of the proper classification of certain imported merchandise which was assessed with duty at the rate of 22½ per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, as manufactures in chief value of metal, not specially provided for.

Plaintiffs claim said merchandise to be properly dutiable at the rate of 12½ per centum ad valorem under paragraph 345 of said act, as modified, *supra*, which provides as follows:

Saddlery and harness hardware: Buckles, rings, snaps, bits, swivels, and all other articles of iron, steel, brass, composition, or other metal, commonly or commercially known as harness hardware; and all articles of iron, steel, brass, composition, or other metal, commonly or commercially known as saddlery or riding bridle hardware; all the foregoing:
If not plated with gold or silver_____ 12½% ad val.

At the trial of this case, four samples of the involved merchandise were admitted in evidence and marked exhibits 1, 2, 3, and 4. Exhibit 1 is representative of the merchandise described on the invoice as D rings; exhibit 2 is representative of the merchandise described on the invoice as lock tongue buckles; exhibit 3 is representative of the merchandise described on the invoice as prong buckle; and exhibit 4 is representative of the merchandise described on the invoice as dog hooks.

Counsel then agreed that the merchandise represented by the above exhibits consisted of harness hardware for use with harness for dogs, in chief value of steel, not plated with gold or silver.

This stipulation leaves only a question of law to be determined by the court, i. e., is harness hardware for use with harness for dogs, in chief value of steel, not plated with gold or silver, comprehended within the terms of paragraph 345, quoted above?

Upon this record, counsel for the plaintiffs contends that the language of paragraph 345 is plain, clear, and unambiguous and that,

therefore, there is no room or necessity for resorting to unwarranted rules of construction to interpret such plain simple language; that such rules of construction are applicable only when the language of a tariff law is ambiguous or when absurd results might occur from a literal interpretation of the statute; that many animals have harnesses, particularly such animals as horses, donkeys, goats, dogs, and mules, and that, if Congress desired to limit the provisions in said paragraph 345 only to those items of harness hardware used in connection with harness for horses, it could, and would, have said so.

In support of the above contentions, counsel quotes the following from the respective cases:

The rule that ordinarily the statute itself furnishes the best and safest guide to its interpretation and that the legislature will be presumed to have intended to mean what it has plainly expressed is so well settled that the citation of authorities is unnecessary. (*United States* v. *Palm, Fechteler & Co.*, 4 Ct. Cust. Appls. 1, T. D. 33195.)

* * * The primary rule for the construction of tariff statutes is to determine the congressional intent. The first source for the determination of this intent is the language itself, which is presumed to be used in its normal sense, in the absence of a special meaning in the trade. (*United States* v. *Esso Standard Oil Co.*, 42 C. C. P. A. (Customs) 144, C. A. D. 587.)

* * * the intent of the lawmaker is the law, but to ascertain that intent courts are bound to have recourse first to the words of the law, and if their meaning be *clear and unambiguous* there is no sound reason why that meaning should be rejected and a search diligently made for some signification other than that which has been clearly expressed. Of course, if, as importers contend, a literal interpretation would necessarily lead to *an absurd result*, it might well be doubted whether the real intention of the lawmaking power was expressed by the language used, and under such circumstances other aids than the terms of the law might be invoked to ascertain the congressional intent. (*Akawo, Morimura & Co.* v. *United States*, 6 Ct. Cust. Appls. 379, T. D. 35921.)

Counsel for the defendant contends that, because of the fact that animals other than horses occasionally use a harness of some kind, recourse to legislative history or other aids to determining the intent of Congress, in enacting the provision in paragraph 345, *supra*, should be had; that the reason Congress did not limit the provision here in question to items used in connection with horses is that it was unnecessary to do so, because the wording of the paragraph, as a whole, reflects the intention of limiting the provision to items used in connection with harness for horses.

We find nothing in said paragraph which, in the slightest, reflects an intention or so much as a thought that Congress intended to limit the provision to items used in connection with harness for horses.

The negotiators of the trade agreement here under consideration were advised by Collier's Encyclopedia that there were 15 breeds of dogs, ranging all the way from Belgian sheepdog to the Saint Bernard,

carried under the heading of "Working Dogs." Said negotiators were also advised by Webster's New International Dictionary that the word "harness" was the gear or tackle (other than a yoke) of a draft animal, especially of a horse, dog, or goat.

No attempt has been made to establish a commercial designation of the involved merchandise. We must, therefore, look to the common meaning of the language employed in deciding this case.

In *Helvering* v. *City Bank Co.*, 296 U. S. 85, the United States Supreme Court said:

* * * We are not at liberty to construe language so plain as to need no construction, or to refer to Committee reports where there can be no doubt of the meaning of the words used.

In *Wilbur* v. *United States*, 284 U. S. 231, the United States Supreme Court also said:

* * *And, in support of his contention, petitioner invokes history of the legislation, but that is not here permissible, for the language and meaning of the statute in respect of the question under consideration are clear. *United States* v. *Missouri Pacific R. Co.*, 278 U. S. 269, 278.

In *Edgar Allen Steel Co.* v. *United States*, 16 Ct. Cust. Appls. 26, T. D. 42715, the Court of Customs Appeals held as follows:

The language in the second proviso of paragraph 305 is not ambiguous and will result in no absurdity or conflict with any other part of the statute, if given the definite meaning which its words clearly import. The courts are, therefore, bound to determine the intention of Congress by the language which was actually used and have no right to give any meaning to such language other than that conveyed by the words, terms, or expressions in which the legislative will was expressed. *United States* v. *Marx*, 1 Ct. Cust. Appls. 152, 155; *Paulina* v. *United States*, 7 Cranch 52, 60; *Lewis* v. *United States*, 92 U. S. 618, 621; *Thornley* v. *United States*, 113 U. S. 310, 313; *Lake County* v. *Rollins*, 130 U. S. 662, 670–671; *United States* v. *Goldenberg*, 168 U. S. 95, 102–103.

Where the language is plain and unmistakable, there is nothing to construe and to determine the purpose of the legislation in any other way than by giving to a plain statute its plain meaning would be nothing less than judicial legislation. *Maxwell et al.* v. *Moore et al.*, 22 Howard 185, 191.

It is our opinion that the correct rule to be applied in cases such as this was stated by the Supreme Court in the *Rollins* case, *supra*, as follows:

* * * Why not assume that the framers of the constitution, and the people who voted it into existence, meant exactly what it says? At the first glance, its reading produces no impression of doubt as to the meaning. It seems all sufficiently plain; and in such case there is a well-settled rule which we must observe. * * *

* * * If the words convey a definite meaning which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the legislature have the right to add to it or take from it. * * * So, also, where a

law is expressed in plain and unambiguous terms, whether those terms are general or limited, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction.

In *Crooks* v. *Harrelson*, 282 U. S. 55, the Supreme Court of the United States also said:

Courts have sometimes exercised a high degree of ingenuity in the effort to find justification for wrenching from the words of a statute a meaning which literally they did not bear in order to escape consequences thought to be absurd or to entail great hardship. But an application of the principle so nearly approaches the boundary between the exercise of the judicial power and that of the legislative power as to call rather for great caution and circumspection in order to avoid usurpation of the latter.

Applying the principles laid down in the above quotations to the facts of this case, we can find no justification for attempting to limit the provisions of paragraph 345 for "harness hardware" to that used with or upon horses only, as contended by counsel for the defendant. Had the Congress or the trade negotiators intended to limit said paragraph to "harness hardware" for horses, it would have been a very easy and simple matter for them to have done so. Not having done so, any construction by this court which would so limit the provisions of said paragraph would be nothing short of attempted judicial legislation. This we decline to do.

As paragraph 345 is written, it covers and includes buckles, rings, snaps, bits, swivels, and all other articles of iron, steel, brass, composition, or other metal, commonly or commercially known as harness hardware, not plated with gold or silver. Counsel for the respective parties agreed at the trial that the involved merchandise consisted of harness hardware for use with harness for dogs, in chief value of steel, not plated with gold or silver.

Out of deference to the contention of counsel for the defendant, we have examined the legislative history of said paragraph 345, as set out in its brief, and we find nothing therein which convinces us that we should so construe said paragraph as to limit its provisions to harness hardware for horses.

For the reasons heretofore stated, we hold the items of merchandise covered by said suits, which were assessed with duty at 22½ per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified, *supra*, to be properly dutiable at the rate of 12½ per centum ad valorem under paragraph 345 of said act, as modified, *supra*, as alleged by the plaintiffs.

To the extent indicated, the specified claim in said suits is sustained; in all other respects and as to all other merchandise, all the claims are overruled. Judgment will be rendered accordingly.