**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**ESTATE of Ellis Branson RIDGWAY, Deceased, Craig Sawyer Ridgway and Ellis Branson Ridgway, Jr., Executors, Respondents.**

**No. 13401.**

United States Court of Appeals
Third Circuit.

Argued Feb. 7, 1961.

Decided June 1, 1961.

Loring W. Post, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Department of Justice, Washington, D. C., on the brief), for petitioner.

James J. Cloran, Philadelphia, Pa. (Frederick E. S. Morrison, Calvin H. Rankin, Ernest L. Nagy, Drinker, Biddle & Reath, Philadelphia, Pa., on the brief), for respondent.

Before BIGGS, Chief Judge, and STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

On September 25, 1930, Ellis Branson Ridgway, decedent, executed a deed of trust, the income being payable to his wife for life, and upon her death to decedent, if living, for his life. The trust was irrevocable except for a power he expressly reserved to make changes with respect to the distribution of principal or income, but not so as to favor himself or his estate. The decedent relinquished this power in 1944, thereby surrendering all control over the trust property and making the trust completely irrevocable.

The decedent died in 1953, and the Commissioner included the value of the trust property in the gross estate under the provisions of § 811(c) (1) (B) of the Internal Revenue Code of 1939, which reads as follows:

§ 811. Gross Estate.

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \*

"(c) Transfers in contemplation of, or taking effect at, death

"(1) General Rule. To the extent of any interest therein of which the decedent has at any time made a *transfer* (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \*

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom \* \* \*.

\* \* \* \* \* \*

"Subparagraph (B) shall not apply to a *transfer* made before March 4, 1931; nor shall subparagraph (B) apply to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516)." 26 U.S.C.A. (Int. Rev.Code 1939) § 811(c) (1). (Emphasis supplied.)

The executors, respondents, take the position that the value of the trust property should not be included in the gross estate because of the exception contained in the last sentence of § 811(c) (1) to the general provisions of subparagraph (B). The exception was added by § 7 of the Technical Changes Act of 1949, 63 Stat. 891, 896, as further amended by § 207 of the Technical Changes Act of 1953, 67 Stat. 615, 623. The Commissioner contends that the word "transfer" as used in the exception does not have the same meaning as that word has when used in the general provisions of the subparagraph, i. e., the transfer in trust

can come within the exception only where it is completely irrevocable, and that occurred here only upon execution of the 1944 amendment. The Tax Court, and we believe correctly so, agreed with respondents. 1960, 33 T.C. 1000.

This appeal comes down to this: Is a "transfer" which is otherwise taxable under the general provisions of subparagraph (B) relieved of taxation under the exception, provided only that it occurred prior to March 4, 1931? The answer must be yes, unless we give a different meaning to the word "transfer" when used in the exception than we do to that same word when used in the general provisions of the subparagraph.

■ Where a word or phrase is used in different parts of the same statute, it will be presumed to have the same meaning throughout. Atlantic Cleaners & Dyers, Inc. v. United States, 1932, 286 U.S. 427, 52 S.Ct. 607, 76 L.Ed. 1204; Schooler v. United States, 8 Cir., 1956, 231 F.2d 560. The need for uniformity becomes more imperative where the same word or term is used in different statutory sections that are similar in purpose and content, In re Associated Gas & Electric Co., D.C.N.D.N.Y.1935, 11 F.Supp. 359, or where, as here, a word is used more than once in the same section. E. g., United States v. Gertz, 9 Cir., 1957, 249 F.2d 662 (term "foreign country" in 18 U.S.C. § 489); Hull v. American Wire Weavers' Protective Ass'n, D.C. N.D.Ohio, 1957, 159 F.Supp. 425 (terms "labor organization," "craft," "trade," and "class" in 29 U.S.C.A. § 158(b) (4) (D). In Lewellyn v. Harbison, 3 Cir., 31 F.2d 740, 742, certiorari denied, 1929, 280 U.S. 560, 50 S.Ct. 18, 74 L.Ed. 615, this court construed the phrase "distribution made" to have the same meaning where used in a section of the statute that both imposed a tax and granted an exception to such a tax, and said: "When the same word or phrase is used in the same section of an act more than once, and the meaning is clear as used in one place, it will be construed to have the same meaning in the next place." We certainly would not be faithful to the

statutory scheme if we gave the word "transfer" in the general provisions of the subparagraph a different meaning than it has in the exception. See United States v. Olympic Radio & Television, Inc., 1955, 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024.

The general provisions of subparagraph (B) include a transfer under which the decedent retains the right whether alone or in conjunction with another to designate the person who shall possess or enjoy the property or income therefrom. It is not limited to irrevocable transfers in trust, as the Commissioner insists the exception is. In addition, § 811(d) of the 1939 Code makes a transfer under the general provisions of subparagraph (B) revocable since it is one where the enjoyment thereof is subject at the date of decedent's death to a change through the exercise of a power, either by the decedent alone, or in conjunction with another. At the risk of repetition, we say that the Commissioner's contention cannot be sustained because of the fact that the exception provision expressly refers to transfers within the ambit of the general provisions of subparagraph (B), which admittedly encompasses revocable transfers, and thus the word "transfer" in the exception provision cannot possibly be limited to irrevocable ones. Neither the statute nor its legislative history support the Commissioner.

The Commissioner advances an elaborate argument in which he intertwines judicial decisions with statutory enactments and legislative history. He begins with the decision of the Supreme Court in May v. Heiner, 1930, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, which held that retention of a contingent life interest by the settlor of an irrevocable trust until the date of his death did not result in the inclusion of the corpus in the settlor's gross estate because title to the property was fixed by the trust deed, and it was not, therefore, in the settlor's possession at the time of his death. On March 3, 1931, Congress, in response to the May decision passed ·a joint resolution, 46

Stat. 1516, amending the estate tax law by providing that property transferred subject to life interests reserved in settlor-transferor was includible in a decedent's gross estate. The Supreme Court in Commissioner of Internal Revenue v. Church's Estate, 1949, 335 U.S. 632, 69 S.Ct. 322, 337, 93 L.Ed. 288, overruled May, thereby causing pre-resolution transactions involving a transfer of property subject to life interest to be included in the gross estate. Because of concern over hardships that this change might bring about, Congress in 1949 enacted § 7 of the Technical Changes Act, which provided that § 811(c) (1) (B) would not apply to a "transfer made prior to March 4, 1931." 26 U.S.C.A. § 811 note. The congressional purpose underlying this exception was the protection of decedents who acted in reliance on the May decision as to pre-1931 transactions. The Commissioner contends that the exception provided in the last sentence of § 811(c) (1) is inapplicable to any transfer of property in trust other than one which is identical to that involved in May.

We should not resort to legislative history where, as here, the language of the statute is so clear as to require no construction. Helvering v. City Bank Farmers Trust Co., 1935, 296 U.S. 85, 89, 56 S.Ct. 70, 80 L.Ed. 62; Wilbur v. United States ex rel. Vindicator Consolidated Gold Mining Co., 1931, 284 U.S. 231, 237, 52 S.Ct. 113, 76 L.Ed. 261; United States v. Missouri Pacific R. R. Co., 1929, 278 U.S. 269, 278, 49 S.Ct. 133, 73 L.Ed. 322. Unlike other extrinsic aids to statutory construction, legislative history is to be used to solve and not create ambiguity. United States v. Shreveport Grain & Elevator Co., 1932, 287 U.S. 77, 83, 53 S.Ct. 42, 77 L.Ed. 175. Nonetheless, we have examined the legislative history of § 7 of the Technical Changes Act of 1949, together with the several decisions that led to its enactment, and are convinced they fully support our conclusion.

Congress enacted § 7 in order to give taxpayers relief from the decision of the Supreme Court in Commissioner of Internal Revenue v. Church's Estate, supra, by restoring "the estate tax law to what it was prior to the Church opinion," and to protect decedents who had relied on May v. Heiner with respect to transactions made before the passage of the March 3, 1931, resolution. Senate Report No. 831, 2 U.S.Code Cong. & Adm News, 81st Cong., 1st Sess., 1949, pp. 2172, 2180. Our inquiry then is to determine what the law was as regards a trust such as this, created after the May decision but before passage of that resolution, which overruled May, but only prospectively. Hassett v. Welch, 1938, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858. We think that the cases are clear that the value of the trust property would not have been includible in the taxable estate of the decedent during that interval.

In Reinecke v. Northern Trust Co., 1929, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, the settlor-decedent created, inter alia, five trusts which were revocable by decedent in conjunction with one or more but less than all of the beneficiaries. These trusts, the court held, were complete transfers not includible within settlor-decedent's estate, as they involved a transfer of legal title whereby the property was put beyond recall by the settlor. Thereafter, the Supreme Court decided May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, primarily on the basis of Reinecke, and within months handed down three per curiam opinions which expressly relied on May. Two of these, Burnet v. Northern Trust Co., 1931, 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412, and Morsman v. Burnet, 1931, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412, like May, involved transfers wherein the settlor reserved life estates but not the power to revert title. The third decision, McCormick v. Burnet, 1931, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413, like Reinecke, involved a revocable transfer in trust under which the settlor-decedent reserved the right, with the consent of one or more of her children, to terminate the trust in whole or in

part, in which event the corpus would revert to her. A thread running throughout all of these decisions is that the transfer in trust placed legal title to the corpus beyond recall by the decedent while acting alone. Here, the decedent could never have caused legal title to revert to himself, for the trust instrument expressly provided that as to principal the power to amend could never be exercised in favor of decedent or his estate.

The question before us has been in the courts before. In Robert J. Cuddihy's Estate, 1959, 32 T.C. 1171, decedent and his wife each created a trust in 1926. The trust created by the wife was terminable in favor of decedent's issue by consent of a majority of the income beneficiaries, including the decedent. In Cuddihy, the Commissioner took the position that a "transfer" did not take place before March 4, 1931, since the trust was terminable with decedent's consent, and thus that a transfer did not take place, within the exception provision, until 1946 when the decedent released his right to consent to its termination. The Tax Court rejected that contention, refused to construe the word "transfer" as including only irrevocable ones, and concluded that a "transfer" was made before March 4, 1931. In re Estate of Canfield, 1960, 34 T.C. 978, which was reviewed by the full court, saw the settlor-decedent create a trust in 1919 to which she transferrd securities, reserving to herself the income therefrom for life and the power to appoint by will distribution of the corpus after death. The settlor was one of the trustees under the trust which contained a provision for the disposition of the trust estate in the event she failed to exercise her testamentary power. The settlor, after irrevocably releasing her power of appointment in 1942, died in 1955. In support of its conclusion that the interpretation of the scope of § 811 (c) (1) (B) was correct in Cuddihy, and in the instant case which had been decided by that time, the Tax Court said at page 986 of 34 T.C.:

"We believe our conclusion is fortified by the fact that Congress, 5 years after the decision in the Church case, which occasioned the adoption of the exception provision, in reviewing and rearranging the estate tax provisions of the 1954 Code, used the same plain and unambiguous language in section 2036 that had been contained in section 811(c) (1) (B) of the 1939 Code, but separated this provision from those involving transfers in contemplation of death and those taking effect at or after death with which it had been coupled in section 811(c) of the 1939 Code. Section 2036 is entitled 'Transfers With Retained Life Estates' and pertains only to transfers under which the transferor retained for life (1) the possession, enjoyment, or right to the income from the property, or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom. To attempt to apply this section to decedent's release of her power of appointment in 1942 in this case would require us either to read additional words, such as 'contemplated' or 'irrevocable,' into the section, or ascribe to the word 'transfer,' as used in this section, a meaning which would include not only the normal concept of the word but also concepts which have their foundation, if any, in gift tax or income tax law."

Though not involving a discussion of the issues pressed here, Denniston v. Commissioner, 3 Cir., 1939, 106 F.2d 925, supports our result. In Denniston, the settlor in 1915 made a transfer in trust under which she retained income for her life with power to appoint the principal by will. Subsequent to the Joint Resolution of March 3, 1931, which taxed transfers with retained life estates, the settlor, in 1932, relinquished her power to appoint. The Commissioner contended there that the 1915 transfer did not become irrevocable until the pow-

er to appoint was relinquished in 1932, and concluded that the property was includible in the gross estate by virtue of the Joint Resolution of March 3, 1931. In holding that the property was transferred in 1915, this court, at 106 F.2d 928, said:

"* * * Nor can the amendment made by the Joint Resolution of March 3, 1931, apply to this case since the transfer under which the decedent reserved her life estate and power of appointment was made in 1915 long before the passage of the Joint Resolution, the operation of which was prospective only. [Case cited.]"

The Commissioner's reliance on Smith v. United States, 1956, 139 F.Supp. 305, 134 Ct.Cl. 136, is misplaced, for the trust there was admittedly revocable during the relevant period, and, in any event, we think that Judge Laramore's dissenting opinion expresses the better view.

The decision of the Tax Court will be affirmed.