Carl **THETFORD**, Mamie Thetford, Charles Phelps, Irene Phelps and Sooner State Securities, Inc., Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 9816.

United States Court of Appeals Tenth Circuit.

Dec. 4, 1968.

Thomas G. Smith, Purcell, Okl. (George Bingaman, Purcell, Okl., on the brief), for appellants.

George R. Hyde, Atty., Dept. of Justice, Washington, D.C. (Clyde O. Martz, Asst. Atty. Gen., Washington, D.C., Bruce Green, U. S. Atty., Max E. Findley, Sp. Asst. U. S. Atty., Muskogee, Okl., and Roger P. Marquis, Atty., Dept. of Justice, Washington, D.C., on the brief), for appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

The appeal is by landowners from an order overruling their objections to the taking of their lands by the Government and from the judgment determining ownership and just compensation in a land condemnation suit.

After the condemnation suit was filed the landowners attacked the right of the United States to take the particular land based upon the same argument urged here. The trial judge rejected the argument and held the taking to be within the authority of the Secretary of the Interior.

A recitation of a part of the history of the project involved is neces-

sary to resolve appellants' first point. By the Act of August 24, 1962, 76 Stat. 395, the Congress authorized the Secretary of the Interior "to construct, operate and maintain the Arbuckle Federal reclamation project" in Oklahoma, the same to be done "in accordance with the Federal reclamation laws (Act of June 17, 1902, 32 Stat. 388 and Acts amendatory thereof or supplementary thereto), for the principal purpose of storing, regulating and furnishing water for municipal, domestic, and industrial use, and for the conservation and development of fish and wildlife, and the enhancement of recreational opportunities. The project shall consist of the following principal works: A reservoir * * *, pumping plants, pipelines, and other conduits for furnishing water for * * * minimum basic recreational facilities." Section 6 of the Act, in pertinent part, further expressly provides: "The Federal costs of constructing the facilities authorized by this section shall be limited to the nonreimbursable cost of the Arbuckle project for minimum basic recreational facilities as determined by the Secretary."

Historically this type of legislation is initiated by a letter report from the Bureau of Reclamation of the Interior Department to the Speaker of the House of Representatives. The Act under consideration here was so initiated and the report was designated House Document No. 242, 87th Congress, 1st Session (1961). The evidence in the record, without dispute, shows that such a report is merely a feasibility report and at most is only a tentative plan for the project being initiated. The report did contain an estimate of the recommended acreage for recreational use over and above the acreage necessary for the construction and maintenance of the dam and reservoir. Attached to the report were maps

showing the area proposed to be taken. Appellants' land was not within that area.

Appellants first attack the validity of the taking of their lands. To support this point they argue that the Act contained limitations upon the taking of land for the project in that there was a defined take line, there was an actual limitation of acreage, and the minimum basic recreational facilities were defined. The fallacy in this argument results from their use of the feasibility report to read into the Act restrictions that do not exist. All such projects must in some way be initiated for consideration by the Congress and it is apropriate for the Secretary of the Interior to take this first step after determining, by a preliminary examination of the proposed project, that the project is feasible and what the probable costs will be. In this determination, and in preparing the report, the Secretary must in a broad way define the project in terms of acreage and probable facilities. Nevertheless, the report is not a part of the Act and we believe it is inappropriate to use the report, or any other part of the legislative history, to arrive at an interpretation of the meaning of the Act. Such practice becomes necessary only if the act in question is ambiguous.[1] The Act here is clear and unambiguous thus we find no reason to look behind the plain language of it. The Act did not attempt to define the term "minimum basic recreational facilities" but left such determination to the Secretary of the Interior.[2] It only limited the authority of the Secretary by the overall funds appropriated to carry out the intent of Congress as expressed by the Act. We must therefore reject the argument of appellants on this point and look only to the clear language of the Act which contained sufficient authority for the taking of appellants' lands.

1. Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62 (1935); Wilbur v. United States ex rel. Chestatee Pyrites & Chemical Corp., 284 U.S. 231, 52 S.Ct. 113, 76 L.Ed. 261 (1931); and United States v. Missouri Pacific R. Co., 278 U.S. 269, 49 S.Ct. 133, 73 L.Ed. 322 (1929).

2. See the pertinent part of Section 6 quoted above.

The trial judge, after overruling the objections of the landowners to the taking, referred the case to a Commission pursuant to Rule 71A(h), F.R.Civ.P. The Commission received proper and adequate instructions from the trial judge, conducted an evidentiary hearing and made and filed a detailed report which carefully reviewed the evidence taken, clearly set out what evidence it found to be more creditable and made awards to the appellant landowners within the range of the evidence. Appellants attack the adequacy of those awards and, in effect, ask this court to reweigh the evidence. This, of course, we will not do for reasons hereinafter expressed.

Specifically, appellants argue that the Commission ignored certain evidence presented by them. These items of evidence concerned the sale of some of the land taken just prior to the taking, the recreational value of the land taken, the expenses by the landowners in improving the lands and the existence of sand and gravel deposits upon a part of the land. A reading of the report of the Commission shows that all of this evidence was received and considered by the Commission but when weighed against the evidence of the Government it was not deemed by the Commission to have probative value in determining a just compensation. The report clearly reflects the reasons for the Commission's choosing to use less than all of the evidence in arriving at a valuation of the land to be taken.

We have carefully read the instructions given by the trial judge to the Commission, the record of the proceedings had before the Commission, and the report of the Commission in determining just compensation as to each tract involved. We must conclude that the Commission was adequately and properly instructed, the evidentiary hearing be-

fore the Commission was conducted in an orderly judicial manner, the report of the Commission meets all of the requirements, as enunciated by the Supreme Court [3] and this court,[4] and the award of just compensation as to each tract is amply supported by the evidence. The trial court accepted and approved the findings of the Commission including the awards of just compensation, accordingly "this court will not retry the facts and a finding based on sharply conflicting evidence is conclusively binding here."[5]

Affirmed.

3. United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964).

4. United States v. Evans, 380 F.2d 761 (10th Cir. 1967); Chandler v. United States, 372 F.2d 276 (10th Cir. 1967).

5. Wilson v. United States, 350 F.2d 901, 905 (10th Cir. 1965); J. A. Tobin Const. Co. v. United States, 343 F.2d 422 (10th Cir. 1965), cert. denied, 382 U.S. 830, 86 S.Ct. 70, 15 L.Ed.2d 74.